[Civ. No. 3476.   First Appellate District, Division Two.—December 15, 1920.]

## LOUIS F. MILLER et al., Respondents, v. EDWARD L. DOHENY et al., Appellants.

[1] QUIETING TITLE—LOCATION OF BOUNDARY LINE—CONFLICTING EVI-DENCE—FINDING.—The true location of the survey of a tract of land is a question of fact; and in this action to quiet title, al-though the evidence introduced on behalf of the plaintiffs and the defendants was conflicting, and the location of various hedges and fences erected by prior owners of the land involved conformed to the survey made by defendants' witness, the finding of the trial court in favor of the plaintiff with reference to the true bound-ary of the property was amply sustained by the evidence.

[2] ID. — ADVERSE POSSESSION — OCCUPATION BY TRUE OWNER WITH EAVES OF HOUSE.—Title to land by adverse occupancy cannot be acquired where the true owner is occupying the land with the eaves of his house.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Olin Wellborn, Jr., and Stephen Monteleone for Ap-pellants.

Muhleman & Crump for Respondents.

LANGDON, P. J.—This is a suit to quiet title to property in Los Angeles, described as the west fourteen feet of lot 42 and all of lot 44 of the Ellis Tract, as per map recorded in book 10, page 91, miscellaneous records of said county. Plaintiffs also asked that the trial court decree that they had an easement of right of way over a certain private alley east of their east line, which alley is owned by defendants. Upon this latter point, the judgment was against plaintiffs, and this matter is not involved, therefore, upon this appeal, which is taken by the defendants from the portion of the judgment quieting title in plaintiffs to the property claimed to be owned by them.

The only dispute is over the title to a strip of land approximately seven inches wide by 138 feet deep along the east line of the property involved in this action. Plaintiffs have a house and sidewalk upon their land. The eaves of this house project to a point within about one inch of the boundary line as found by the trial court. In 1913 defendants erected a fence at a place which plaintiffs claimed was upon their land. This fence extends under the eaves of the plaintiffs' building.

The plaintiffs and defendants, adjoining land owners, derived their title from a common source, to wit, George A. Newhall. It was stipulated at the trial that plaintiffs are the record owners of lot 44 and the west fourteen feet of lot 42 of the Ellis Tract. These lots lie on the south side of Twenty-third Street, in the city of Los Angeles, as shown by the maps of the tract contained in the record before us.

Appellants make two contentions: First, that the survey of their witness Wright, starting with a dividing fence as a monument, should have been accepted as conclusive as against the testimony of the surveys by other engineers who testified on behalf of plaintiffs, and who had taken as a starting point an old stake which had been found at the northwest corner of lot 44 of the Ellis Tract. In this connection, it is the contention of appellants that the dividing fence was evidence of an agreed boundary line, and that the survey of the property should have been made from it as a starting point rather than from the location of the stake found by plaintiffs' surveyor. The second contention of appellants is that they should have been awarded title to the strip of land in controversy upon the theory of adverse possession. We shall consider these contentions in the order in which they are made.

The conclusion of the trial court upon the first question, obviously, was arrived at upon a consideration of the testimony of the witnesses on behalf of plaintiffs who had made surveys of the land in dispute. Surveys of the portion of lot 42 in dispute were made at various times by V. J. Rowan and Leonard O. Hall, witnesses for plaintiffs. These surveys all agree and according to them the eaves of plaintiffs' house are within an inch of plaintiffs' easterly line as found by the court. A conflict occurs in

the evidence on this point, raised by reason of the fact that defendants introduced the testimony of George A. Wright, who had surveyed the land. His survey differed from those of the other surveyors, and according to his records and maps the eaves of plaintiffs' house are over the line on defendants' property.

Mr. Rowan, testifying for plaintiffs, stated that he had been engaged in the occupation of civil engineer and surveyor in the city of Los Angeles for over thirty years. He testified to having made original surveys of all the lines of all the properties involved in this suit before the properties were subdivided into small holdings, except a few of the lots in St. James Park. He surveyed the entire district, covering the lots of the Ellis Tract facing the south line of Twenty-third Street before the year 1900. In January, 1899, he surveyed the Ellis Tract Annex, lying on the west of lot 44 of the Ellis Tract, and at that time found an old three by three stake planed down and marked with the figures "44" at the northwest or most northerly corner of lot 44 of the Ellis Tract. He placed a tack in lead at this point and it is so marked on the maps before us here, and it appears thus in his notes taken at the time of the survey. This was used as a starting point for his survey. This witness also found a stake in place in February, 1898, marked "24–26" for the dividing line between lots 24 and 26 of the Ellis Tract, and this was also found in place again on June 1 and June 26, 1898, and used for the east line of the Doheny property as it now exists. Mr. Rowan's testimony as to the existence of this stake is as follows: "The first survey I made out there was in October, 1895. This was the first time I saw this stake that I have described as a three by three stake marked '44.' The next survey I made in that vicinity was February, 1898, and then followed the June survey in 1898, and the one in January, 1899, and the one in October, 1901. I found identically the same stake on each of these occasions; it was pretty well protected by an old cypress hedge. I first saw that stake in October, 1895. It was about a three by three—what we call three by three, and it was a little bit longer one way than the other. I should say perhaps a two and a half by three inch stake; and was marked '44' on the easterly side toward the Ellis

Tract. It stood up about two to three inches from the ground; it was marked with a stencil or painted—it is pretty hard to remember those things. I was so certain of it I made notes of it in my note-book, and thought it might come in handy in the future to simply tie to it.'' The engineer, Leonard O. Hall, in 1917, found the tacks in lead placed by Rowan at these points where he had found the stakes, and as these points checked with his survey, he adopted them. The survey made by Hall was in accordance with that of Rowan and in accordance with the judgment of the trial court. The testimony of the surveyors was further corroborated by the testimony of J. H. Claudius, who was at one time the owner of lot 40 and the easterly twenty-one feet of lot 42 of the Ellis Tract, and who purchased lot 44 and the westerly fourteen feet of lot 42 in 1902. He testified that he located a stake at or near the northwest corner of lot 44 at the place where an old stake was found by him. His testimony regarding the location of this stake is as follows:

''Subsequently I bought forty-five or· forty-six feet of land west of the alley. I located the stake at or near the northwest corner of lot 44. I burned some grass there one day, and it kind of spread on me, and I took some wood stakes and went through under it, and found a stake there, and I never knew it was there before—I guess it was about three foot inside of the sidewalk. I found that stake right after I bought lot 44. I guess it was an old stake; it was painted white. I found it under a hedge fence. I found two stakes. I found one right at the southwest corner of the barn and the other one over there, at or near the northwest corner of lot 44, the point marked 'R' on the map; it was in from the Twenty-third Street line, about two feet, I guess, on the west side of the hedge. The stake I found under the hedge was a survey stake, painted white. It had no marks on it, nothing but a tack in the middle of it. It was an inch and a half square; or it might have been two inches or larger maybe. It was in pretty good condition when I found it. It was above the ground a very little. At the time I found the stake at the point marked 'R' on Plaintiffs' Exhibit 1, being at or near the northwest corner of lot 44, the sidewalk had not been widened to eight feet. When I said that I found the stake

about three feet in from the sidewalk, I referred to the old sidewalk, which was in place at that time.''

[1] Appellants contend that the testimony quoted and referred to herein,. together with the other testimony in the record upon the subject is not sufficiently definite to establish the location of the monuments of the original survey of the Ellis Tract—and that because these cannot be established, the location of various hedges and fences erected by prior owners of the land involved are the best evidence of the boundary line, and that these conform to the survey of Mr. Wright, who testified on behalf of the defendants. We think the testimony establishes the location of these stakes with sufficient accuracy and certainty. The true location of the survey is a question of fact. (3 Washburn on Real Property, 6th ed., p. 410, sec. 2343; *Abbott* v. *Abbott*, 51 Me. 581; *Opdyke* v. *Stephens*, 28 N. J. L. (4 Dutch.) 90; *Pettingill* v. *Porter*, 3 Allen (Mass.), 349.) This fact was decided in this case, upon conflicting evidence, in favor of the plaintiffs. This, in itself, would be a sufficient answer to the appellants' contention upon this question, but we have the further fact that it appears in the record that some of the fences and monuments relied upon by appellants were not placed with any idea of marking the boundary line. Mr. Claudius, a former owner of the property, testified in rebuttal, that he did not intend to mark the exact boundary line when he erected a fence upon the property. He testified that he had not measured to locate his fence upon the true line, but merely ''took a guess at it.'' This positive testimony, of course, would overcome any presumption relied upon by appellants that this fence marked or was intended to mark the true boundary line. Any presumption with reference to the other fences and hedges, relied upon by appellants, is overcome by the definite testimony of several persons as to the existence of survey stakes upon the property which did not conform to a boundary line consistent with the location of said fences.

Under all the testimony in the record, it is apparent that the finding of the trial court with reference to the true boundary of the property in dispute is amply sustained by the evidence.

[2] The other question presented by the record is the one of adverse possession. It is contended by appellants that as the alley upon appellants' property was graveled and laid out by them in accordance with the survey of Mr. Wright, for more than five years before the filing of this action, and said alley included the strip of land claimed by plaintiffs, that regardless of the finding of the trial court as to the true boundary line, appellants have acquired title by adverse possession against the plaintiffs herein. Appellants rely upon the fact that a copy of the survey by Mr. Wright was filed for record, and assert that thereafter appellants occupied the strip of land in dispute adversely to the plaintiffs under color of title. Cases are then cited to the effect that where possession is created adversely under color of title, an actual possession of all of the property is not necessary—a continuous possession of a part extending to the whole.

The evidence of the existence of the gravel walk over the line of plaintiffs' property was the testimony of Mr. Wright to the effect that in December, 1907, he made a survey of the land and at that time the driveway was graveled and smoothed out to the point contended for by appellants as the boundary line. Assuming, but not deciding, that this would constitute adverse possession of the seven inches of plaintiffs' land included in such driveway, nevertheless, before this possession ripened into a right, and in 1909, the plaintiffs erected a house upon their property and occupied the land in dispute by the eaves of said house which the record shows extended to within an inch of their true line. The case of *Gillespie* v. *Jones*, 47 Cal. 259, cited by appellants to meet this state of facts, does not serve their purpose. It is true that case holds that one claiming possession adversely to the true owner by reason of the fact that the eaves of his house overhang the land of said true owner, only establishes an easement for such use by adverse possession and not a full title to the land. But in the present case the situation is reversed. It is the true owner who is occupying the land with the eaves of his house. His ownership extends up to the sky and down to the center of the earth. He is holding his own, and not seeking to acquire the land of another by adverse possession. We apprehend that he need not occupy his land by

resting his structure upon the ground. We are of the opinion that he would be occupying his land if he built his house on stilts; and one claiming adversely could not dispossess him by building a fence thereunder, even under color of title.

However that may be, it also appears that since 1909, the plaintiffs and their predecessors in interest have used the cement sidewalk along the side of the house for the purpose of ingress and egress to their premises until the erection of defendants' fence in 1913. Appellants' contention with reference to this fact is that as the court found plaintiffs had no right, title, or interest in the alleyway of which this sidewalk is a part, plaintiffs' use of the same was permissive. It is to be remembered that in addition to finding that the use of the alleyway by plaintiffs was permissive, the court found that the seven inches of the alleyway in dispute was the property of the plaintiffs. Its finding that plaintiffs had no right or easement in the alley necessarily applies only to the portion of the alley which was found to be the property of the defendants, and not to the portion that was found to be the property of plaintiffs. Any other construction of the findings would render them inconsistent.

From the fact that the eaves of plaintiffs' house extended over the land in dispute since 1909, and from the further fact that during the time defendants claim to have occupied said strip adversely by reason of having used the same as an alleyway, the plaintiffs and their predecessors used this alleyway jointly with the defendants, it clearly appears that the occupancy of the defendants of said strip was never an exclusive occupancy. Exclusiveness is one of the elements necessary to an adverse occupancy in order that it may ripen into a title. (*Hart* v. *All Persons, etc.*, 26 Cal. App. 664, 666, 673, 675, [148 Pac. 236]; *Unger* v. *Mooney*, 63 Cal. 586, [49 Am. Rep. 100].)

We are, therefore, of the opinion that the trial court was correct in its holding that the claim of title by adverse possession was without merit.

The judgment is affirmed.

Brittain, J., and Nourse, J., concurred.