[Civ. No. 12560.   Second Dist., Div. One.   Oct. 10, 1941.]

HERMAN I. ENOS, Appellant, v. LAWRENCE R. MURTAUGH, as Administrator With the Will Annexed, etc., et al., Defendants; COUNTY OF LOS ANGELES, Respondent.

270

Sloan Pitzer for Appellant.

J. H. O'Connor, County Counsel, Earl O. Lippold, Deputy County Counsel, for Respondent.

WHITE, J.—Plaintiff brought an action under section 749 of the Code of Civil Procedure to quiet title and determine adverse claims to certain real property, alleging that for more than twenty years he had been in actual, exclusive and adverse possession thereof, had continuously paid all taxes thereon, and claimed to own the same in fee "against the whole world." He further alleged that he purchased the property in 1916; that by the mistake of the seller the deed to the property vested title in Ida M. Enos, mother of plaintiff; that a mortgage on the property executed by Ida M. Enos to the defendant county of Los Angeles was void and of no effect. The trial court, after hearing the evidence, made its findings of fact and conclusions of law adverse to plaintiff's contentions. From the judgment that plaintiff take nothing he prosecutes this appeal.

The grounds of appeal are stated to be that the findings and judgment are contrary to the law and the evidence; that the trial court erred in adopting the theory that it was necessary to a recovery that plaintiff have lived on the property all of the twenty years; and that the trial court also erred in sustaining an oral demurrer to that portion of his complaint which charged that record title was put in the name of his mother through the mistake of the seller.

The facts disclosed by the record are substantially as follows: In 1916 plaintiff's mother, Ida M. Enos, entered into a contract to purchase from Janss Investment Company the real property in question, the same being a residence lot in Wilmar. In 1920 a grant deed was executed and delivered, in which she was named as sole grantee. A receipt for this deed, signed "Ida M. Enos, by Herman I. Enos," was introduced in evidence. The signature thereon was acknowledged as his by the plaintiff. The plaintiff testified that he furnished the purchase money. In 1917 a house was built on the property and plaintiff and his mother lived there together for several months until the plaintiff married. In 1935, assertedly without the knowledge of plaintiff, his mother executed a mortgage to the defendant county of Los Angeles for the sum of $35 for aid given her in the past and sums to be furnished in the future. The total amount alleged to have been furnished up to the time of her death in September, 1937, was $749.19. Upon the death of his mother plaintiff petitioned for letters of administration and listed the property in question as part of her estate in the petition, in the inventory, and also in his final account and petition for discharge. After his discharge and the appointment of a successor administrator, he filed the present action. The successor administrator, named as a defendant, filed no answer and did not appear in the action.

The plaintiff testified that after the lot was purchased a house was built on the property at his expense and that he and his mother lived there. His testimony as to his "adverse possession" thereafter is as follows:

"Q. By the Court: How long did you continue to reside in that home? A. Well, off and on for clear up to date. Q. And who resided there at the time that you state in 1917? A. My mother and myself and no one else. Q. How long did you both continue to reside there? A. Well, my mother lived in the house all of her life up until the time she passed away, which was September. Q. How long did you continue to reside there? A. Well, I was married in October 22, 1917, and I was up on the desert up until about 1920 and then I returned and built a house of my own but the house— Q. Where did you build that one? A. Right next to the same property. Q. By Mr. Pitzer: On the same lot, wasn't it? . . . A. Not on the same lot. Q. It is on an

adjoining lot? A. That is right. Q. And did you ever reside in the house with your mother thereafter? A. No; I don't believe I did. I continued to pay all of the bills. THE COURT: I did not ask you that. 'I continued to pay all of the bills' will be stricken. All right. Proceed. Frankly, I don't see any case at all now, not after those statements. How are you going to prove adverse possession when you did not live there? MR. PITZER: Well, I knew that he did live there. Q. By Mr. Pitzer: You did not live in the house at all? A. Not that little house. Mother lived there and we were back and forth. Occasionally I would live there in the house and maybe overnight and my wife and I have lived there for, oh, I don't know, two or three months at a time, but I built my own house and my wife and I went to ours right next door. . . . ''

Upon the same subject, plaintiff's wife testified as follows: ''Q. By the Court: Did you ever live in the house on lot 10 that was Mrs. Enos' house? A. Yes, I did. Q. How long a time did you live there? A. Well, I lived there from October 22, 1917, when we were first married, for almost a year. Q. And thereafter did you live there at all? A. Yes; I lived there every summer following that until we built in 1920. Q. After 1920 did you ever live there? . . . Q. By the Court: I am asking did you ever live there? A. Well, at times. . . . Q. By the Court: Did you ever reside in that house after 1920? A. Well . . . yes, I did. Q. All right, when was it? A. Well, I don't know as I could specify the date but there were times, oh, several days at a time I would be there. Q. Over how long a period of time? A. Well, for the whole 20 years. . . . Q. By Mr. Pitzer: The whole 20 years? A. A day or two at a time. Q. Now how long was she sick when you took care of her? A. Seven years. Q. Seven years. Who took care of her? A. Oh, at times she took care of herself. Q. Well, when she could not, who took care of her? A. I did. . . . Q. By the Court: Did you keep house in your house during that same time too? A. Yes. . . . . ''

The plaintiff testified that he paid all taxes and assessments on the property from the time of its purchase up to the present. In this connection it appeared that most of such payments were made by check payable to his mother, who in turn disbursed the funds. The tax bills were in the

name of his mother, who claimed ownership of the lot in property statements made to the county assessor. When his mother sought county aid, plaintiff made a property statement at the request of the department of charities, in which he did not claim ownership of the property. It also appeared that in December, 1934, plaintiff received from his mother a grant deed to the westerly fifty feet of the property. He testified that at the time he received this deed he knew that the record title to the property was in his mother.

Upon the foregoing evidence, the trial court was fully justified in concluding that plaintiff had failed to establish a title by prescription. ▆▆▆ The possession necessary to support such a claim must be "adverse," that is, hostile to the claim of the true owner, and must operate as an ouster of the holder of the legal title; and the burden was upon the plaintiff to show that his occupancy was hostile and not in subordination to the legal title. (1 Am. Jur. 872, 873; *Janke* v. *McMahon*, 21 Cal. App. 781 [133 Pac. 21]; *Pacific Gas & E. Co.* v. *Crockett L. & C. Co.*, 70 Cal. App. 283 [233 Pac. 370]; *Dreyer* v. *Cole*, 210 Cal. 339 [292 Pac. 123]; *Brown* v. *Bachelder*, 214 Cal. 753 [7 Pac. (2d) 1027].) It is true, as stated by appellant, that actual residence upon the property is not always essential. (*Webber* v. *Clarke*, 74 Cal. 11, 15 [15 Pac. 431].) But, as is stated in the last-cited case, there must be a subjection to the will and dominion of the claimant, manifested in some appropriate manner. ▆▆▆ In the case at bar, the plaintiff's mother was in actual occupancy of the premises, and it was at all times known to plaintiff that she held the legal title thereto. The acts of the plaintiff in paying for the lot, building the house, living on the premises with his mother for a short period, and paying the taxes, were, in the circumstances, entirely consistent with her title and claim of ownership. As above noted, the taxes were in fact paid by the mother, with funds furnished by the plaintiff. He also gave her money to pay other bills. In other words, he was supporting his mother, as he was bound to do. There is no evidence that at any time the fact that he claimed adversely was communicated to his mother, nor is there any evidence to warrant a conclusion that his mother's occupancy of the premises was other than by virtue of her own legal title. On the contrary, the evidence, as hereinbefore narrated, points directly to the

opposite conclusion. In this connection, the fact that plaintiff accepted a deed from his mother of the westerly fifty feet of the property is not without significance. As to the claim that the trial court erroneously held that it was necessary for plaintiff actually to reside on the premises for the entire twenty years, it appears to us rather that the trial court correctly took the view that in the circumstances, and considering the relation of the parties, no other exercise of dominion by plaintiff being shown, and the property being occupied exclusively by the holder of the legal title for practically the entire statutory period, there was no manifestation of possession by plaintiff, adverse or otherwise.

Appellant suffered no prejudice from the action of the trial court in sustaining an "oral demurrer" to the paragraph of his complaint which charged that the deed was issued to his mother by mistake. That paragraph reads as follows: "That by the mistake of the Janss Investment Company, a corporation, and Janss Company, a corporation, the corporations from whom the property was purchased the title to said property was described in said deed as vested in Ida M. Enos, a widow." In effect, the court's ruling was to strike the paragraph, which, standing alone, stated no cause of action and constituted mere surplusage in a cause of action to establish a title by prescription. No facts were alleged showing how the mistake occurred, or why it was not discovered, or explaining or justifying the delay in seeking relief therefrom. The evidence at the trial overwhelmingly demonstrated that the mistake, if any, in the execution of the conveyance, was known to and acquiesced in by plaintiff over a long period of years.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.