[Civ. No. 7396. Third Dist. Nov. 17, 1947.]

M. R. DOOLING et al., Appellants, v. HERMAN A. DABEL et al., Respondents.

McComish & Pettitt and Blaine Pettitt for Appellants.

Ralph Rutledge for Respondents.

THOMPSON, J.—Plaintiffs brought suit to quiet title to an easement in a roadway across defendants' farm, claimed

to have been acquired by prescriptive use for a period of more than five years. The trial court adopted findings to the effect that plaintiffs traveled the roadway by mere permission of the owners, and therefore acquired no prescriptive title thereto. Judgment was accordingly rendered against plaintiffs. From that judgment this appeal was perfected.

It is contended that the findings and judgment are not supported by the evidence. No other issue is raised on this appeal.

Defendants' predecessors in title, Mr. and Mrs. J. Will Jones, acquired title to a 1,320 acre farm in Colusa County, purchased from the estate of Cornelia C. Millington, deceased, for the sum of $17,400, July 25, 1924. They moved to the ranch in November of that year. Mr. Jones died in 1940. Mrs. Jones continued to live on the farm until November, 1944, when she sold it to the defendants, Herman A. Dabel and wife. The grantees immediately took possession and now occupy the premises. In May, 1943, Mrs. Jones leased a part of the ranch to S. Almeida. The Jones ranch adjoins "County Road No. 21" on the west. It contained a dwelling house, barn and other buildings situated some distance from said county road, together with an enclosed corral containing gates. The Jones ranch was fenced. There was a roadway leading westerly from the county road to the dwelling house and barn. Beyond the buildings there was a trail leading westerly. When Mrs. Jones was asked if there was not a roadway westerly from the corral, she said, "If you would call it a road; there is a track there. We always drove our cattle over it and we got wood in over it. While we were there it was never used by the public. . . . It was for our convenience." For a number of years the field beyond the corral was plowed and planted to grain. The trail beyond the corral was often washed out by rain. It was sometimes traveled by the neighbors on horseback. Its course varied from time to time. It was not used by vehicles. To follow said road and trail through defendants' land to plaintiffs' ranch it was necessary to pass through four gates.

Plaintiffs' father filed on a section of government grazing land in 1917. It adjoins defendants' farm on the west. Plaintiffs obtained title to their range in 1924. They reside on the easterly portion of their ranch, and usually graze cattle on the more remote portion. Plaintiffs claim title by prescription to an easement in a roadway "sixteen feet in width." That roadway extended from the county road over defendants'

land to their dwelling house and other buildings. From those buildings a trail or pathway led through or around their corral and westerly in a meandering course across a creek and through a gate into plaintiffs' property. Beyond the corral the trail or pathway was sometimes traveled by plaintiffs on foot or on horseback. It was not traveled by vehicles. The course of that trail varied from time to time. It was sometimes washed out, in part, by heavy rains. The defendants plowed and planted fields of grain beyond the corral, which travelers were required to drive their cattle around. It is true that two of the plaintiffs and several other witnesses testified that they traveled on horseback or drove cattle along that so-called roadway, at will, without protest, continuously, several times a month during the winter seasons when cattle were driven into the plaintiffs' grazing ranch. There is a conflict of evidence in that regard. There is convincing evidence that they did not always follow the same trail or course. Dan Biscaro, who was employed for five and a half years on the Browning ranch adjoining defendants' farm on the south, testified that he had observed plaintiffs "taking their cattle in and out of the hills . . . across the Browning land." Plaintiffs concede that they never asserted to the defendants, or their predecessors in title, the claim of a right to travel the roadway or trail. Mr. M. R. Dooling testified as follows:

"Q. Did you speak to any of them? [About that right to travel the roadway] A. No. Q. You never had any conversations with them? A. No, not anything about any consent of going through." Mrs. Jones testified that when she was negotiating a lease of part of her premises to S. Almeida, in 1943, Mr. M. Ray Dooling "asked me if I would fix it so that they [plaintiffs] could go through and look after their cattle," and that she refused to make that provision in the lease. She testified that at no time did the plaintiffs "ever make any assertion or claim . . . they had a right to [go] over . . . [defendants'] land to get to their land to the west." Regarding plaintiffs' claim of right to travel the roadway and trail, the following colloquy occurred between Mr. M. R. Dooling and the court:

"The Court: Now, Mr. Dooling, you told the Court earlier in the trial that you claim a right to go through that driveway from the County road up past the house, past the barn, through four gates to get to your property over there where you [are] raising cattle. Will you tell the Court upon what you base that right? The Witness: Well, I have traveled

that road for—— The Court: . . . Did you claim any right to travel it then when you first started to traveling it? The Witness: No, nobody ever—no one, it was traveled there and we used it. The Court: When you go through a man's driveway, private driveway and you go right up within 60 feet of his house, past his barn, through four gates, you have a pretty good idea that you haven't any right to go through there, haven't you? The Witness: Well—— The Court: You were going up through simply because he let you go through, weren't you? The Witness: Well, there was some other people going to other places. . . . The Court: You didn't have any dealings with her that would give you the right to go through there, did you? The Witness: No, I never had any dealings with her but——."

Upon conflicting evidence the court adopted findings favorable to the defendants, determining that plaintiffs had not acquired title by prescription or by adverse possession to an easement in the roadway or trail; that they had not used the roadway continuously, openly, notoriously or adversely, or with a claim of right for five successive years, but, on the contrary, that they had merely used it by permission of the defendants and their predecessors, through neighborly courtesy. Judgment was accordingly rendered in favor of the defendants.

We are of the opinion the findings and judgment are adequately supported by the evidence. ■ A prescriptive right to an easement in a roadway over the real property of another person may be acquired only by clear evidence of adverse use, openly, notoriously and continuously asserted for the statutory period of five years. ■ The claim of right must be communicated to the owner of the land, or the use of the roadway must be so obviously exercised as to constitute an implied notice of the adverse claim. (*Smith* v. *Skrbek*, 71 Cal.App.2d 351, 356 [162 P.2d 674]; *Clarke* v. *Clarke*, 133 Cal. 667 [66 P. 10]; *Grimmesey* v. *Kirtlan*, 93 Cal.App. 658 [270 P. 243]; 1 Cal.Jur. 608, § 81; 2 C.J.S. 558, § 45.) ■ The burden is ordinarily on one who claims a prescriptive right to an easement in a private roadway over another man's property to affirmatively prove the essential elements thereof. (*Smith* v. *Skrbek, supra.*) ■ It is true that evidence of obvious, open, notorious and continuous use of the roadway for more than five years constitutes prima facie evidence of constructive notice of a claim of prescriptive right thereto, which may require the owner to rebut the presumption

by proof that the road was not so used or that it was traveled by permission of the owner. (*Smith* v. *Skrbek, supra; Fleming* v. *Howard,* 150 Cal. 28 [87 P. 908] ; *Pacific Gas & Electric Co.* v. *Crockett Land and Cattle Co.,* 70 Cal.App. 283, 290 [233 P. 370] ; *Shonafelt* v. *Busath,* 66 Cal.App.2d 5 [151 P.2d 873] ; *Wallace* v. *Whitmore,* 47 Cal.App.2d 369 [117 P.2d 926].)

But, when the evidence of prescriptive use of a roadway is conflicting, it is the sole province of the jury or the trial judge to determine from the facts and circumstances of the case whether the prescriptive title thereto has been established. Where there is a conflict of evidence in that regard, and there is substantial evidence to support the findings of the court or jury, as there is in this case, the conclusions of the court may not be interfered with on appeal. (*Conaway* v. *Toogood,* 172 Cal. 706, 709 [158 P. 200] ; *McMorris* v. *Pagano,* 63 Cal.App.2d 446, 450 [146 P.2d 944].) In the Shonafelt case, *supra,* it is said at page 8 :

" ' . . . Upon a prima facie showing of title by the plaintiff, it is solely the province of the trial court to determine whether the same has or has not been overcome or dispelled by evidence presented by the defendant.' "

We think the evidence in the present case that the plaintiffs used the roadway and trail over defendants' land, from time to time, by riding over the road and trail on horseback and by driving their cattle thereon in the winter seasons, for several years, without protest or opposition from the owners of the land, does not necessarily establish their title to an easement therein by prescriptive right, particularly since the roadway from the county road to the dwelling house, barn, buildings and corral was apparently constructed, used and maintained for the owners' convenience and necessity. The way beyond the buildings passed through the corral and several gates maintained by the owners for their own use, and thence beyond that point to plaintiffs' land along a course which often varied, which was obstructed by the cultivation of defendants' grain field, and a part of which trail was sometimes washed out by heavy rains, and over which vehicles could not be driven. Even though it be assumed that plaintiffs' use of the roadway to defendant's house and farm buildings established prima facie evidence to title thereto by prescription, that presumption appears to have been adequately rebutted. The plaintiffs never affirmatively asserted an adverse right to use the road. They concede that fact. There is some evidence they did not claim that right,

for when Mrs. Jones was about to execute a lease to S. Almeida to a part of her premises, the plaintiff, M. R. Dooling, asked her to "fix it so that they could go through and look after their cattle," which she refused to do. We think the evidence refutes the presumption that plaintiffs acquired title to the easement by prescription. In the Smith case, *supra,* which was similar to the present case in some respects, it is said at page 359, regarding the presumption of prescriptive rights:

"It is a reasonable presumption that since the roadway was constructed by the defendants' predecessors in title, upon his own land, for his personal benefit as means of access from the public highway to his dwelling house and farm buildings, that the plaintiff's use of the road was merely permissive, as a neighborly convenience. (*Jensen* v. *Gerrard,* 85 Utah 481 [39 P.2d 1070]; 28 C.J.S. 668, sec. 18 (2).) In the text last cited it is said:

" 'Where a landowner opens up a way on his own land for his own use and convenience, the mere use thereof by another, under circumstances which do not injure the road nor interfere with the owner's use of it, will not in the absence of circumstances indicating a claim of right be considered as adverse, and will not ripen into a prescriptive right no matter how long continued.' "

The preceding declaration of law appears to fit the facts of the present case.

The plaintiffs claim prescriptive title to an easement in a 16-foot roadway along a definite course which is described in the amended complaint. There is persuasive evidence that described course, beyond defendants' farm buildings and corral, was not a roadway, but merely a trail or pathway which was sometimes traveled by plaintiffs on horseback in driving cattle through defendants' property to the grazing fields of plaintiffs. It was not used except in the winter seasons. Nor was the described course continuously used. Plaintiffs frequently varied their course, driving their cattle along other routes, sometimes along their line fence, and sometimes over the property of another neighbor by the name of Browning. Dan Biscaro, who worked on the Browning property for more than five years, testified that he saw them drive their cattle in and out of their property over the Browning land. Such frequent changes in the route of the claimed easement to a definite roadway tends

to refute the prescriptive right thereto. It confirms defendants' claim that the use was merely permissive for the convenience of a neighbor. ■ The rule is uniformly recognized that a right of way across another person's property can be acquired by prescription only by a definite and certain line of travel for the statutory period of time. The route must be confined substantially to a definite course. ■ The mere traveling over land of an owner in various courses and directions for a period of five years will not suffice to establish prescriptive title to an easement in a roadway. (*Matthiessen* v. *Grand,* 92 Cal.App. 504, 510 [268 P. 675] ; 19 C.J. 899, § 77 ; 143 A.L.R. 1403, note.)   In the Matthiessen case, *supra,* it is said on page 510 that :

"The line of travel over a roadway which is claimed by prescription may not be a shifting course, but must be certain and definite. Slight deviations from the accustomed route will not defeat an easement, but substantial changes which break the continuity of the course of travel will destroy the claim to prescriptive rights."

In 19 Corpus Juris, at page 899, it is said :

"To establish a private right of way by prescription the line of the traveled road must be definite. The practice of passing over land in different directions, however long continued, does not establish a right of way by prescription. Any material deviation in the line traveled from the previously traveled way breaks the continuity of the use required to establish a prescriptive right."

Likewise, the caption to annotations of authorities on that subject, supported by numerous cases from various jurisdictions, found in 143 American Law Reports, at page 1403, asserts that :

"To acquire a right of way by prescription, the user must be confined to one definite and certain line or path. Travel over a tract of land in various courses or directions for the prescriptive period is insufficient to establish a right of way over any particular path."

The plaintiffs in this case have failed to establish an easement in a definite roadway or route through defendants' land to their own property.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.