[Civ. No. 23085. Second Dist., Div. Two. June 23, 1958.]

EMILY MARANGI, Respondent, v. LOUIE J. DOMENICI et al., Appellants.

Dockweiler & Dockweiler and Frederick C. Dockweiler for Appellants.

Hahn & Hahn and Leonard M. Marangi for Respondent.

ASHBURN, J.—Defendants appeal from a judgment quieting in plaintiff title to a certain easement, enjoining obstruction of same and awarding damages for prior interference with its use. Appellants do not complain of the injunction or the amount of damages or method of computing the same. They urge reversible error in the adjudication of ownership by plaintiff of the easement in question. The claim is insufficiency of the evidence. There is little conflict therein and the evidence at those points of conflict must be construed most favorably to respondent. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550] ; *New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987].)

The easement pertains to a parcel of land which is 6 feet 10 inches wide and separates the residences of the opposing parties. Their lots are 30 feet wide and about 160 feet deep, fronting on Manitou Avenue in the city of Los Angeles. That street bounds the lots on the north and the disputed parcel runs north and south. Plaintiff owns the lot on the east and defendants the one on the west. Originally, both parcels were owned by Mr. and Mrs. Miller. Defendants' lot then had a house on the front portion, known as number 2912 Manitou Avenue, and a barn in the rear. Plaintiff's parcel had a front house, number 2914, a rear house and behind it a garage. The

Millers first sold the property owned by plaintiffs. It went initially to Sarah Clem, who conveyed it to Seventh Day Adventist Church which sold to plaintiff Marangi in 1920. Mr. and Mrs. Miller continued to live in number 2912 until they sold it to Mrs. Malengo about 20 to 25 years before the trial, which would be somewhere from 1932 to 1937. It then passed to Mrs. Malengo, junior, who in turn sold to defendants Domenici in November, 1949.

When plaintiff acquired her property in 1920 there was an unpaved driveway about 6 feet wide between the two houses, which the Millers and plaintiff used in common for vehicular and pedestrian traffic; plaintiff's use was primarily for access to the rear house and to the garage where her husband parked his automobile; the Millers had no car, but they built a residence in the rear of their lot which was occupied by their daughter, the driveway being used for her purposes. There was no fence separating the properties while the Millers owned number 2912. In 1924 or 1925, the driveway was paved to its full width of 6 feet and plaintiff and Miller each paid half of the cost. Neither party asked permission at any time to use the driveway and both used it continuously as desired.

This probably was a tacit recognition of an existing fact, namely, that plaintiff was the owner of an easement to use the entire strip, the easement growing out of the Miller conveyance to Clem and plaintiff's succession to Clem's title. Apparently section 1104, Civil Code, vested such title in Clem and her successors in interest. It says: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." But respondent does not rest her case upon this theory and the evidence does not affirmatively show that the driveway was in existence at the time of conveyance to Clem. Respondent relies upon prescriptive title to the easement and the judgment rests upon an affirmative finding to that effect. To that question we address ourselves.

Mrs. Malengo, senior, the mother of defendants' vendor, while she was owner of 2912 built a 4-foot wooden fence; this was about 1930; the fence extended from the back line of the lot to a point near the front line of the rear residence on plaintiff's property, which point is also about 83 feet from

the front line of the lots. Plaintiff and Mrs. Malengo did not
know exactly where the boundary line was, so they settled
upon the location where the fence was built and orally agreed
that it was the true boundary. Later survey, made for de-
fendants, showed that the fence was about 2 feet west of the
true boundary. When the younger Mrs. Malengo owned the
property she replaced the wooden fence with a chain link
fence upon the same line and extending to the same point
as the one it replaced. This was done in the early 1940's and
there the fence remained until defendant tore it down on
April 10, 1957. The Malengos, mother and daughter-in-law,
used the driveway as their convenience dictated and so did the
plaintiff. No request for permission was made on either side
and there were no objections. When World War II came, Mr.
Marangi discontinued the use of his garage for storing his
car, as he was participating in a share-the-ride arrangement,
but the driveway was used for access to the garage or back
yard as occasion arose. When the war was over, use of the
garage for storage was resumed to some extent and its use
for other purposes continued. There was no means of access
to it other than the driveway in question. At all times the
portion north of the rear residence was used as needed for
accommodation of the tenants living in the rear residence on
each of the two lots.

In November, 1949, defendants Domenici bought the prop-
erty known as number 2912 from Malengo. The driveway was
then being used openly and continuously by plaintiff and her
tenants and also by Mrs. Malengo and her tenants. Defendant
shortly began to object to the use of the driveway by plaintiff
or her tenants, either for vehicles or as pedestrians. He told
them to keep off his side of it and threatened to charge them
rent for use of same. Plaintiff and her tenants ignored these
objections and threats and continued to use the full width
of the driveway for vehicles and pedestrians, doing so openly
and under obvious claim of right. This continued for a period
in excess of the statutory five years (Code Civ. Proc., § 325),—
from 1949 or 1950 until April 10, 1957. The last preceding
statement is subject to this qualification: In 1954 plaintiff built
a porch on the west side of her rear residence, leaving less
than four feet of clearance between it and the existing fence.
This rendered vehicular travel to the garage impossible and
use of the driveway back of the porch was discontinued except
for pedestrian travel. However, the use of the driveway for
its full 6-foot width from the front of this residence to the

street, about 83 feet, was at all times continued as before. (The judgment is limited to that portion of the driveway.)

On April 10, 1957, defendant tore down the existing fence and built a new one upon or near the true boundary line as shown by his survey, some 12 inches to the east of the old one. This fence, 5 feet high, extended from the back line to the front line of the lots, leaving only 22 inches between the fence and plaintiff's front house, thus preventing any use of the driveway for vehicles and rendering difficult its use by pedestrians on plaintiff's side of the fence. Plaintiff on the same day, April 10, 1957, sued for an injunction and obtained a mandatory preliminary injunction on May 1, 1957, requiring the removal of the fence. This was done. The court, after trial on the merits, granted a permanent injunction against obstructing plaintiff's easement by maintaining a fence thereon or in any other manner. The basic finding reads: ''That plaintiff and cross-defendant, continuously, for approximately 37 years, used the full width of the driveway separating plaintiff's and defendants' property, including approximately 5 feet of defendants' property, for ingress to and egress from plaintiff's property, for vehicular and pedestrian traffic, without permission and under a claim of right.''[1]

Appellants' arguments on appeal attack the sufficiency of the evidence to sustain certain elements of a prescriptive easement, counsel insisting that it spells merely permissive neighborly accommodation rather than open, notorious and adverse user.

Emphasis is laid upon the contention that ''exclusiveness is one of the elements necessary to an adverse occupancy in order that it may ripen into a title,'' quoting *Miller* v. *Doheny,* 50 Cal.App. 413, 419 [195 P. 745], a case which on appeal did not involve the sufficiency of the evidence of existence of an easement. Appellants' argument is predicated upon the fact of use of the driveway by both plaintiff and defendants and by their respective predecessors in interest. It is settled law in this state that exclusiveness of user is not essential to acquisition of a prescriptive easement. The matter is thus explained in 28 Corpus Juris Secundum, section 15, pages 658-659: ''It is generally stated that the user must be exclusive. . . . The term 'exclusive,' however, does not mean that

[1]During the pendency of this action plaintiff sold the property to Catarino and Lupe Navarro, but the action has been continued in the name of Marangi pursuant to section 385, Code of Civil Procedure; the judgment runs in their favor. No point is made on appeal with respect to this procedure.

the easement must be used by one person only, but simply that the right shall not depend for its enjoyment on a similar right in others; it must be exclusive as against the community or public at large. The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement, or by the owners of adjoining land.'' That such is the law of California appears from the following decisions: *Crawford* v. *Lambert,* 136 Cal.App. 617, 620 [29 P.2d 428]; *Bernstein* v. *Dodik,* 129 Cal.App. 454, 458 [18 P.2d 983]; *Morse* v. *Miller,* 128 Cal.App.2d 237, 249-250 [275 P.2d 545]; *Lindsay* v. *King,* 138 Cal.App.2d 333, 343 [292 P.2d 23]; *O'Banion* v. *Borba,* 32 Cal.2d 145, 151 [195 P.2d 10]. In the Crawford case, *supra,* it is said: ''The use of the way under a claim of right, while necessarily hostile, need not amount to an ouster or the exclusion of the owner of the servient tenement from its use.'' (P. 620.) In Bernstein, *supra:* ''It is not necessary that one claiming by adverse possession be in personal occupation, since occupation by a tenant inures to his benefit. (*Weyse* v. *Biedebach, supra* [86 Cal.App. 712 (261 P. 1086)]; *Beckett* v. *City of Petaluma,* 171 Cal. 309 [153 P. 20].) The use of said right of way by respondents and their grantors was not impaired by the enjoyment of a like right by appellants and others. (*Wells* v. *Dias, supra* [57 Cal.App. 670 (207 P. 913)]; *Lund* v. *Johnson,* 162 Wash. 525 [298 P. 702].)'' (P. 458.) See also 17A Am.Jur. § 70, p. 682; 27 A.L.R.2d anno. at p. 337.

The claim that plaintiff's use of the driveway was but a permissive neighborly accommodation and not under claim of right cannot prevail in the face of the record at bar. That question is essentially one of fact. (*O'Banion* v. *Borba, supra,* p. 150; *Bernstein* v. *Dodik, supra,* p. 457; *Crawford* v. *Lambert, supra,* p. 620; *Dooling* v. *Dabel,* 82 Cal.App.2d 417, 422 [186 P.2d 183].) The following cases cited by appellants recognize this rule: *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10]; *Eddy* v. *Demichelis,* 100 Cal.App. 517 [280 P. 389]; *Dooling* v. *Dabel, supra.* Appellants' opening brief says that they ''fully realize that the chief question for the trial Judge to decide was a factual one in the light of the relationship of the parties and the surrounding circumstances.''

The use of the driveway by plaintiff could not have originated in any permission from defendants, for it had existed and continued for many years before they ever acquired the property, and the fact that plaintiff never asked permission to use the driveway suggests a claim of right to do so. (See

*Costello* v. *Sharp*, 65 Cal.App. 152, 162 [223 P. 567].) The open and continuous use by plaintiff and her tenants, for foot travel and for vehicles, in the face of defendant's demands that they desist and his threats to charge them rent, is inconsistent with any idea of neighborly accommodation or permissive use. The case of *Smith* v. *Skrbek*, 71 Cal.App.2d 351 [162 P.2d 674], cited by appellants, says that the "use of the roadway must be so obvious as to constitute implied notice of the adverse claim." This standard is met in full measure at bar. The language of *O'Banion* v. *Borba, supra*, 32 Cal.2d 145, at page 148, is here apposite: "From the foregoing circumstances an inference reasonably arises which constitutes substantial evidence that, contrary to defendants' contention, plaintiffs' use of the easements was open and notorious and under a claim of right; that the use was such that notice of a claim of right adverse to the owner of the servient tenement may be imputed to him. Certainly from those circumstances we cannot say as a matter of law that the trial court's conclusion finds no basis in the evidence." At page 149: "The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. In the appellate court the issue is merely whether there is sufficient evidence to support the judgment of the trial court."

Cases cited by appellants in support of their claim of neighborly accommodation, rather than adverse user, are readily distinguishable. In each of the following cases the court ruled that the evidence was not such as to overthrow the finding of the trial court that the alleged prescriptive easement did not exist: *Smith* v. *Skrbek, supra; Clarke* v. *Clarke, supra; Eddy* v. *Demichelis, supra; Enos* v. *Murtaugh*, 47 Cal. App.2d 269 [117 P.2d 905]; *Lyons* v. *Schwartz*, 40 Cal.App. 2d 60 [104 P.2d 383]; *Janke* v. *McMahon*, 21 Cal.App. 781 [133 P. 21]; *Dooling* v. *Dabel, supra; Miller* v. *Doheny, supra; Pinheiro* v. *Bettencourt*, 17 Cal.App. 111 [118 P. 941]; *Orr* v. *Kirk*, 100 Cal.App.2d 678 [224 P.2d 71]. The judgment in each case was affirmed. In *Kaler* v. *Brown*, 101 Cal.App.2d

716 [226 P.2d 66], the finding of permissive use was based upon undisputed evidence. Such authorities are of little value in an effort to overthrow the factual finding of the trial court.

■ A suggestion, rather than an argument, is made by appellants' counsel that the nonuser for vehicular traffic of the rear portion of the driveway, the portion extending from the front of the rear house to the back property line, somehow impairs the existing easement or proves its nonexistence. This view is untenable, as indicated by the ruling in *Murray* v. *Fuller*, 82 Cal.App.2d 400, 407 [186 P.2d 157]. Moreover, the use of this portion of the driveway by pedestrians has continued to date, thus showing absence of intent to abandon.

■ Changes in the extent or nature of user which do not increase the burden on the servient tenement do not destroy the easement though acquired by prescription. (See *Baldwin* v. *Boston & M. R. R.*, 181 Mass. 166 [63 N.E. 428, 430]; *Virginia Hot Springs Co.* v. *Lowman*, 126 Va. 424 [101 S.E. 326, 328]; *Phillips* v. *Bonadies*, 105 Conn. 772 [136 A. 684, 686].) As above pointed out, the judgment is limited to the 83 feet of driveway lying north of the rear house on plaintiff's premises.

No prejudicial error appearing in this case, the judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 21, 1958.