[Civ. No. 9629. Third Dist. July 21, 1959.]

JOHN J. MEDINA et al., Respondents, v. ROLLEN EDGAR BROWN et al., Appellants.

―――――――――

*Assigned by Chairman of Judicial Council.

Robert E. Laughlin for Appellants.

A. John Merlo for Respondents.

SCHOTTKY, J.—Rollen Edgar Brown and his wife Mildred Gertrude Brown and George Porter and his wife Leah Porter have appealed from a judgment granting John J. Medina and his wife Bertha Clark Medina an easement for almond farming over a portion of appellants' land.

The Medinas, the respondents, own the north one-half of Lot 14. The appellants own the south one-half of Lot 14. Each property has mature almond trees growing thereon. Mrs. Medina first took possession of the north one-half of Lot 14 in 1939, and shortly thereafter she built a cattle fence on the southern boundary of her property. This fence was removed one year later. Brown acquired the south one-half of Lot 14 in 1951. At the time no continuous fence separated the properties. In 1952 Brown built a fence around his property in order to pasture livestock. In 1956, before Brown sold a portion of his property to the Porters, the property was surveyed and the true boundary was determined. Immediately thereafter he constructed a new fence some 12 feet north of the old fence. The Medinas had used the land in dispute since 1943. They used the 12-foot strip in question for harvesting, which meant that canvas was spread upon the ground and the trees were knocked to shake the almonds to the ground. After Brown constructed the second fence, the Medinas brought an action to compel the Browns to remove the fence, to prevent trespass, and for damages.

The second amended complaint alleged in count one that the Medinas were the owners of the north one-half of Lot 14; that the Porters and the Browns were the owners of the south one-half of Lot 14; that the Medinas were in exclusive and adverse possession of the northerly 12 feet of the Porters' and Browns' property since 1939, claiming to own the same in fee against the world; and that the Medinas had paid the taxes assessed against the property. Count two of the complaint alleged

trespass. The Porters and the Browns cross-complained and sought to quiet title.

The trial court found that the Medinas were entitled to an easement for "almond farming and orchard farming" in all usual and reasonable methods over the property in dispute. The Porters and the Browns have appealed from the judgment entered in accordance with said findings.

Appellants' first contention is that the complaint does not state facts sufficient to constitute a cause of action. They argue that while under a general allegation of ownership title by adverse possession may be proved, at no place in the complaint is it alleged that respondents are the "owners" of the 12 feet in question. The second amended complaint alleged:

"That Plaintiffs by themselves and predecessors in interest, have been in the actual, exclusive and adverse possession of the Northerly twelve feet of the property above described in Paragraph III continuously since the year 1939, claiming to own the same in fee against the whole world and have paid taxes of every kind levied or assessed against said property during the period of seventeen years continuously next preceding the filing of this Complaint."

Appellants contend that the words "claiming to own the same in fee" are insufficient to allege ownership, but we believe that the language, together with the other language of the paragraph, is clearly sufficient to support a finding of adverse possession. Pleadings "must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

Appellants contend also that the judgment is against law because the elements of continuity, hostility, and exclusiveness of possession were not proved. The evidence disclosed that the Medinas used the strip for harvesting their almonds and for discing. Obviously, this was not a daily occurrence. But continuity of use can only be determined when the nature of the right claimed is examined. (*Hesperia Land etc. Co.* v. *Rogers,* 83 Cal. 10 [23 P. 196, 17 Am.St.Rep. 209].) All that it would be necessary to prove in the instant case would be that the area was disced when necessary and that the area was used for harvesting when necessary. The testimony of the Medinas is sufficient to sustain the requirement of continuity.

Exclusiveness of user is not a necessary element of an easement by prescription. (*Marangi* v. *Domenici,* 161 Cal.App.

2d 552 [326 P.2d 527].) The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement. (*Marangi* v. *Domenici, supra.*) What is meant when exclusiveness is used in reference to an easement is that the right shall not depend for its enjoyment on a similar right in others. It must be exclusive as against the community or public at large. The use under a claim of right while it must be hostile need not amount to an ouster of the owner of the servient tenement. The intermittent use by the Medinas under the circumstances presented here would suffice.

The element of hostility is satisfied by the testimony of the Medinas that they had used the strip without permission from anyone. They alleged they claimed the right to use the strip. There was evidence that Brown knew they were using it. This is sufficient to provide the element of hostility.

In cases involving the acquisition of an easement by prescription, the rule is that the issue is ordinarily one of fact giving consideration to all the circumstances and the inferences that may be drawn therefrom. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 149 [195 P.2d 10].) We are satisfied that there is substantial evidence in the record to support the judgment.

Appellants contend further that certain of the findings are indefinite, uncertain, and ambiguous. The findings read as a whole are clearly sufficient to support the judgment, and the well-settled rule is as stated in 48 California Jurisprudence 2d, page 317: ". . . They will be construed with reference to the issues raised by the pleadings. If there are several findings they will be considered together, and as a whole, and if there is a conflict or inconsistency among them they will be reconciled, if possible, with a view of sustaining the judgment. The judgment will not be set aside unless the findings are incapable of being reconciled." In the light of this well-settled rule, appellants' contentions as to the findings appear to be hypertechnical. For instance, appellants state: "Finding number 5 is inconsistent in that in the first sentence it finds 'that since 1939 the plaintiffs have *usually* cultivated the aforesaid 11 feet'; and in the second sentence it finds that since that date plaintiffs have '*continuously* farmed the said strip of land, etc.' " There is no inconsistency in this finding when it is read as a whole, and so read it is fully supported by the evidence and supports the judgment. Said finding five reads: "That since 1939 the Plaintiffs have usually cultivated the aforesaid eleven feet; that since

that date Plaintiffs have continuously farmed the said strip of land for almond nuts by irrigating, cultivating, discing, plowing, turning, harrowing, leveling, harvesting, fertilizing, spraying and otherwise continuously performing all necessary farming operations in the usual cultivation of the strip of land in question. That these usual farming operations and cultivations were in full view of Defendants and their predecessors in interest and were open, notorious, exclusive, continuous, hostile and adverse since the year 1939.''

In summary, we are convinced that the evidence is ample to support the findings and that the findings support the judgment.

' The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied August 18, 1959, and appellants' petition for a hearing by the Supreme Court was denied September 16, 1959.

*Assigned by Chairman of Judicial Council.