[Civ. No. 3771. Fourth Dist. Apr. 22, 1949.]

JULIA MAY PRATT, Respondent, v. ARTHUR K. HODGSON, Appellant.

Guy Knupp, Jr., for Appellant.

Jamison & Jamison for Respondent.

GRIFFIN, J.—Plaintiff brought this action against defendant alleging ownership of a lot near Porterville 365.65 feet in depth with a south frontage of 75 feet on Grand Avenue. Defendant owned a tract of 2.7 acres immediately west of plaintiff's lot. Plaintiff claims a right of way for road purposes over the easterly 21 feet of defendant's tract extending to her northerly lot line. Plaintiff's lot is occupied by a residence, barn, garage and a chicken house. Defendant's acreage was previously occupied by a residence, garage and other out-buildings, but all were removed at the time he purchased it in 1944. Plaintiff's husband, now deceased, acquired this lot in 1922 from one Hearn and lived thereon with plaintiff, his wife, until 1927. In 1937, plaintiff moved back onto the property. During the interim it was occupied by tenants. Plaintiff acquired title under a decree of distribution from her husband's estate in 1930. Defendant acquired his property in 1944 from one Heindel, who acquired it from one Hearn in 1930.

Plaintiff, her tenant, and predecessors in interest made various uses of the claimed right of way since the lot was acquired in 1922. It was mainly used for the purpose of giving access to her garage, barn and chicken houses, but the way also extended beyond the garage to the northerly line of her lot.

Plaintiff claims that the right of way is appurtenant to her land, has been used openly, notoriously, continuously, and ad-

versely to defendant and his predecessors for more than 30 years, and claims an easement by prescription. The evidence showed that while plaintiff was temporarily away from her property defendant plowed up the right-of-way shortly before this action was filed, but plaintiff continued to use it thereafter. An injunction is sought enjoining defendant from destroying it, to require him to replace it in its former condition, and other general relief is sought.

Defendant denied all material averments of the complaint except he admitted that plaintiff had used the alleged right of way for ingress and egress, but did so only "sporadically." The trial court granted the injunction, found generally for plaintiff, and required defendant to replace the right of way or in lieu thereof pay plaintiff for doing so. Defendant appeals mainly upon the ground that the evidence is insufficient to show (1) User sufficiently continuous to establish an easement by prescription; and (2) To show that the user was hostile and adverse, as distinguished from merely permissive.

Defendant on appeal concedes that such use as made was continuous for at least five years and such use was open and notorious, but claims it was sporadic and not sufficient as a matter of law.

Plaintiff testified that the only way she had of getting into her garage and barn was by means of this right of way; that she had gravel hauled in on several occasions to improve it; that while they were living there she and her husband "used it all of the time"; that Hearn "was using it when they bought the property from him"; and that that was the only way he had to get to his garage and barn. Prior to the time the houses and garage on defendant's property were removed this same roadway was used for ingress and egress to and from that property.

Much reliance is had upon the fact that a sign was posted at or near the right of way reading "Private Entrance, Revocable to Pass at any Time," indicating that the use thereof was merely permissive and not adverse. Plaintiff testified that such a sign was not posted on the strip but there was some "sign over further," but she never paid any attention to it; that it had been there a "long time" but she didn't think it was there in 1922 when they purchased the property; that she thought, when they bought the property, the road belonged to it.

Plaintiff's son testified that he remembered the property in 1922; that the roadway was there; that it was used by

plaintiff, himself, and others; that his brother lived on the property as tenant from 1928 to 1937 and he used it "more or less frequently"; that another tenant, Premo, used it for access to his garage; that Hearn used it for a driveway before his parents purchased the property; that he saw a sign on the west side of the roadway, 10 or 15 feet back, which said something "about private road" and that it was put there after the place was purchased in 1922; that "it was so far from the roadway and the lettering was such, I never assumed it had any reference to our roadway . . . if it had any significance it was in reference to the Lipscomb property"; that that was his "impression."

Defendant testified that there 'were improvements on his premises when he bought it in 1944, and he entered his garage through this private lane; that in 1947, his buildings were removed and that he ordered the roadway plowed up but did not speak to plaintiff about it; that when he purchased the property there was a sign up, just west of the road, reading "private road" but after he moved the houses he did not know if there was one there; that he knew the driveway was there many years before he purchased the property and he presumed the plaintiff was using it to get into her garage.

Mr. Hearn testified that at one time he owned both parcels of land involved; that the driveway was there when he bought the property and he recalled seeing a sign "Private Driveway" on a palm tree facing Grand Avenue; that this was when his tenant Lipscomb lived there; that he lived on the Pratt property for a while in 1920 and used this same driveway for his garage and for general use; that he put up the sign at Heindel's request; that Heindel did not say anything at that time about keeping the Pratts off the driveway.

Mrs. Lipscomb testified that she lived on the defendant's property from 1926 to 1946; that the same driveway led to both garages which were about opposite each other and that the sign was there in 1926 and continued to be there until 1946; that Pratts and their tenants continued to use the roadway between those years; that at one time the driveway from the garage to the barn was plowed up and planted to grain but Pratts continued to use it at all times.

There is substantial evidence to show a user sufficiently continuous to establish an easement by prescription. (Restatement of the Law of Property, § 459; *O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].) ■ As a general rule the question as to whether the use was adverse and hostile or

whether it was permissive is a question of fact and not one of law, and if there is any substantial evidence to support a finding of adverse hostile use the findings of the trial court must be sustained. (*O'Banion* v. *Borba, supra.*)

The cases relied upon by defendant, such as *Tarpey* v. *Veith*, 22 Cal.App. 289 [134 P. 367]; *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366 [162 P.2d 669]; *Carroll* v. *Agliano*, 80 Cal. App.2d 46 [180 P.2d 747]; involve posted roadways. In upholding the findings that the use was only permissive, it was held that the existence of a sign would *tend* to negative any possible presumption that the use was adverse or that it *indicated* such fact.

█ It appears, therefore, that such a posted sign as here displayed was only one of the many factors to be considered by the trial court and the existence of the sign did not conclusively show that the use was only permissive as to plaintiff. In the instant action both plaintiff's and defendant's property was previously owned by the same person who used this roadway for the joint benefit of both properties in gaining access to the garages, barns and for general use. It was used as such for over 20 years. During this period one owner, as successor in interest, determined that he had the exclusive ownership of the driveway. A sign was posted at or near the entrance to it indicating to the general public that as far as this one purported owner was concerned it was a "private driveway" or "private entrance."

The record indicates that insofar as plaintiff was concerned, she did not believe nor was she ever told by defendant that this sign was intended for her or her tenants. She believed that this right of use belonged to the property at the time she purchased it. She maintained this right throughout the many years of occupancy and did not believe it was a mere matter of neighborly accommodation. The cases cited by defendant and the general rule applicable are ably discussed in the O'Banion case, which is particularly applicable to the instant case. It was there determined, as it must be here, that there was ample evidence from which the trial court could conclude that plaintiff's use was continuous, uninterrupted, adverse, and under a claim of right, with notice of which defendant and his predecessors could be charged.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.