[Civ. No. 5048. Fourth Dist. Apr. 19, 1955.]

VIOLA MAE MATHEWS et al., Appellants, v. JOHN C. BRINTON et al., Respondents.

Alva D. McGuire for Appellants.

Thompson & Colegate and H. N. Dougherty for Respondents.

BARNARD, P. J.—This is an action to quiet title to an easement for a right of way over land owned by the defendants.

The Indians of the Morongo Tribe own the northeast quarter of a certain section of land in Riverside County. It is located 6 miles from the Morongo Reservation, and will be referred to as the Indian land. There was no house or other building on this land, which is hilly and covered with brush except for 40 acres which had been cleared. The land was used for pasturage at times, and some farming was done on the cleared portion.

The defendants, who are husband and wife, acquired the southeast quarter of this section in 1941. For convenience, the husband will at times be referred to as the defendant. There are county roads along the west and south sides of this section. For many years there has been a drive or roadway near the center of the defendants' quarter section, running northerly from the county road at the south up to the home and farm buildings, and thence northerly to a gate in the fence between this property and the Indian land.

For a year or two after 1941, John Morongo, who at intervals was spokesman for the Morongo Tribe, did some farming on the Indian land and he and other Indians who were working for him used this road across defendants' land. The defendant then leased the Indian land from John Morongo and used it until 1949. Between 1941 and 1946, the defendant also acquired the land to the east and to the north of the Indian land. Because of his lease, he was able to take his stock across the Indian land, and on to his land at the north. John Morongo died in 1949, and some of the plaintiffs then locked the gate between these two quarter sections thus preventing the defendant from crossing the Indian land in order to reach his land to the north. In November, 1949, the defendant bought the easterly 30 feet of the northwest quarter of this section, in order to have access to his land lying north of the Indian land. Since January, 1950, he has denied to the plaintiffs the use of this roadway leading to his home and across his property.

In December, 1950, counsel for the plaintiffs wrote the defendant claiming that his purchase of the 30-foot strip was for the purpose of excluding the Indians from any means of reaching their land, and stating that unless the defendant granted them a right-of-way by which they could reach their property, suit would be commenced to restrain him from closing the road in question. On January 3, 1951, the defendant gave them a written easement granting to the Indians a right to pass over the north 30 feet of the 30-foot strip, along the west side of the Indian land, which he had purchased. However, this writing was not acknowledged. It appears that the purpose of this was to enable the Indians to use, so far as the defendant was concerned, a roadway leading from the county road at the west of this section and entering the Indian land at that point. The Southern California Edison Company, which had an easement for that road, had given the Indians written permission to use that road and the owner of the northwest quarter of this section also gave the Indians permission, orally, to use that road over his land. Being dissatisfied with the easement thus given them, this action was brought by "Viola Mae Mathews, Spokeswoman for the Morongo Tribe of Indians, for herself as well as for all other members of the tribe residing on the Morongo Indian Reservation."

The complaint alleged that for more than 50 years the Morongo Tribe of Indians have had and claimed an easement

over and across the land of the defendants for the use of the road here in question; that their use of said easement during all of said period has "been open, notorious, visible and continuous, without protest, opposition or denial of right"; and that on January 5, 1950, the defendants wrongfully denied the members of the tribe further use of said road easement. In a separate cause of action damages were sought, based on the claim that the defendants had maliciously encircled the Indian land with the purpose of preventing them from entering said land. The defendants answered and filed a cross-complaint seeking to quiet their title as against the plaintiffs. The court found in all respects in favor of the defendants finding, among other things, that the defendants' refusal to allow the Indians to use the road since January 5, 1950, was not wrongful; that the Indians have not had or claimed an easement across defendants' land during the past period of 50 years or during any period of time; that they have not used the road adversely but such use as they have made of the road has been permissive use; and that they are not entitled to damages. As conclusions of law, it was found that the plaintiffs should take nothing from the defendants, and that the defendants should have judgment quieting their title in accordance with the allegations of their cross-complaint. Judgment was entered accordingly.

After hearing the plaintiffs' motion for a new trial, the court entered an order to the effect that a new trial would be granted unless the defendants granted a permanent right-of-way to the plaintiffs over and across the 30x30-foot square area covered by the written easement given to the Indians by the defendant on January 3, 1951. The defendants were given up to a certain date "to have the proper documents drawn for that purpose." Before that date arrived the plaintiffs, apparently declining the advantage tendered them by this order, appealed from the judgment. The defendants notified the court that they were willing to grant the right-of-way mentioned in this order.

The appellants' main contention is that the evidence is not sufficient to sustain the findings with respect to their use of this right-of-way over the past years. It is argued that the evidence shows that they used this easement for over 39 years; that their long continued use raises a presumption which supports their claim of right; that there was no competent evidence that their use was permissive at any time, since "there is no reason why John Morongo should have

asked permission to use a roadway the Indians had been using for at least 31 years before that time''; that their title to such an easement had vested prior to the time the defendants acquired the southeast quarter of this section; that the respondent had excluded the appellants from the only possible means of reaching their property; and that the grant of an easement given them by the defendant on January 3, 1951, was void since it was improperly executed.

A witness for the plaintiffs testified that the road across the Brinton property was ''the only road we traveled to get onto our land,'' that he know of no other road, and that neither Mr. Brinton nor anyone else who owned this land had ever told him that he should not use that road. He further testified that he used that road in 1911 to haul out some hay and a hay baler; that he was then working for John Morongo; that he did not work for Morengo at any later time; and that all the facts to which he testified took place in 1911. The widow of John Morongo testified that she first traveled this road in 1911 ''when he (John Morongo) went to farming''; that at that time there was no other means by which the Indians could reach their land; that John Morongo farmed the Indian land ''off and on from 1915 until about 1947''; that he farmed it on his own accord for himself; that she went over the road with him and ''lots of times'' by herself; that he used the road to haul his hay out and take stock in; that, aside from herself and her husband, ''all the men that used to work for us went in there''; and that after 1940 her brother went in to haul out some hay. Another witness, when asked how long he had traveled that road, replied: ''Since 1911, I guess, when I was working for Mr. Morongo.'' He also testified that he knew of no other road at that time on which to get to the Indian land. Viola Mae Mathews, the present spokesman for the Indians, testified that she had known the Indian land since 1919, that the land had been used for farming and from time to time for livestock grazing, and that the land had been used by the Indians since 1919. She further testified that she was not on this roadway, or had not seen anyone on this roadway between 1941 and 1951 ''because John Morongo had that property leased in behalf of the Morongo Tribe. He and his farm hands traveled that road, the Indian employees.'' Another witness testified that he had used this road while working with a hay baler crew around 1923 and 1924, that he had gone over the road in 1948, and that Mr. Brinton had never said anything to him

about using the road. Another witness testified that he had used the road in 1922 or 1923 when working for John Morongo, and had hauled some hay in 1944 or 1945 while in partnership with John Morongo.

The defendant testified that when he purchased his property he did not know that the Indians had used this roadway or had any reason to use it; that shortly after he acquired the property John Morongo told him that he wanted to go up there with his team to do some work, and asked permission to use this road; that he gave him permission to do so; that during the time John Morongo worked the Indian land he took others along with him to assist in the work, sometimes two sometimes more; and that John Morongo worked the Indian land under this permission for a year or two, and then he leased the land from John Morongo. A written lease dated December 8, 1944, and signed "John Morongo" was introduced in evidence. The defendant also testified that he then farmed or operated the Indian land until John Morongo's death in 1949; that when he purchased the property there were signs posted at the entrance from the public road to this roadway, and along the roadway, saying that this was private property; and that similar signs have been kept posted ever since.

█ It is well settled that a prescriptive right to an easement of this kind may be acquired only by clear evidence of adverse use openly, notoriously and continuously asserted under a claim of right for the statutory period of five years, and with notice of which the defendants and their predecessors could be charged. (*Dooling* v. *Dabel,* 82 Cal.App.2d 417 [186 P.2d 183]; *O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10].) █ The question as to whether the use of such a road was adverse or was permissive is one of fact for the trial court. (*Carroll* v. *Agliano,* 80 Cal.App.2d 46 [180 P.2d 747].) █ The burden of proving all the essential elements of an adverse possession or prescriptive right is on the party relying upon it. (*Nelson* v. *Robinson,* 47 Cal. App.2d 520 [118 P.2d 350].) █ The question as to the effect of any presumption that the use is under a claim of right and adverse to the owner of the land must be considered along with the showing as to the nature of the use during the prescriptive period, with all other facts of the case, and is one of fact for the trial court which must decide whether the proven facts do or do not justify an inference showing the required elements. (*O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10].)

Under the established rules, it must be held that the evidence supports the court's findings as to the essential facts relating to the existence or nonexistence of the right of the appellants to this claimed easement across the respondents' land. The evidence produced by the appellants was sketchy, at best, with little or no showing of continuous or uninterrupted use over the years. There was no substantial evidence indicating a hostile use of the road, under an adverse claim of right, as distinguished from the acceptance of an ordinary neighborly accommodation. The evidence indicated that the only farming done on the Indian land, and the only fairly continuous use of the roadway, between 1911 and 1941, was that done and made by John Morongo. Nearly all of the witnesses who testified to any use of the land during that period were his employees. The evidence indicates that there was a gate across this roadway between respondents' land and the Indian land for many years, and there is no evidence that any claim of right was ever openly or notoriously asserted. Morongo himself seems to have regarded his use of the roadway as permissive, since he asked permission of the new owners of the land when he desired to use the roadway after they took possession. The uncontradicted evidence is that John Morongo then used the roadway with permission of the respondents for two or three years, and until he leased the land to the respondents. It may reasonably be inferred that his employees were included in this permission. Except for one occasion, there is no evidence that the land was used by any of the plaintiffs during the period while the Indian land was leased by the respondents. Signs were posted for many years calling attention to the fact that this was private property. The evidence, with the inferences which may reasonably be drawn therefrom, fully supports the court's findings.

Whether or not the appellants had other means by which they could reach their land is not a controlling issue in this case. Not only does the evidence not disclose any duty resting upon the respondents to furnish a means of ingress and egress to the appellants, but the evidence discloses another means of ingress was available to them. Some contention is made that the trial court had no jurisdiction "to attempt to coerce the tribe into accepting an easement across defendants' 30x30-foot parcel," because the tribe had acquired a vested easement over the roadway in question, and because any such order would be an idle act since the permission of others would

be required to give effective access to their land. The evidence is not sufficient to establish such a vested easement and the court's attempt to give the appellants some relief was not an idle act since, if carried out, it would enable them to use the permission given them by the other owners by crossing defendants' land at this point. In considering the equities of the case, upon which the appellants seem to rely, it may not be amiss to point out that when this appeal was argued this court suggested the desirability of a compromise, and deferred submission for sixty days for that purpose. During that period the respondents offered to grant to the appellants a right-of-way for a road along the west side of the southeast quarter of this section, leading directly from the county road at the south to the south line of the Indian land. This offer was rejected by the appellants, and this court was asked to decide the appeal on its merits.

The only other contention made is that the court erred in striking out two answers made by one witness, and in sustaining an objection to one question asked of the same witness. Two of these matters were immaterial, the third was not responsive to the question asked, and none of them could conceivably have affected the result.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.