[Civ. No. 6367. Fourth Dist. Dec. 19, 1960.]

JACK R. SUFFICOOL et al., Respondents, v. TOM W. DUNCAN et al., Appellants.

Cox & Pendleton for Appellants.

Redwine & Sherrill for Respondents.

GRIFFIN, P. J. — Plaintiff-respondents' complaint sets forth two causes of action against defendant-appellants Tom W. Duncan and his wife. The first cause of action was to quiet title to an easement for road purposes over and along an unnamed road (designated Mesa Road), and the second sought a declaration that said road is a public road. After trial the court found and entered judgment quieting title of plaintiffs to the easement for road purposes appurtenant to their land over the unnamed road and further declared that said road is not now and never has been a public road.

Defendants appeal from paragraph one of the judgment

declaring plaintiffs to be owners of the easement described for road purposes. On appeal they contend generally that the evidence is insufficient to support this portion of the judgment, in that. (1) the use by plaintiffs' predecessors of the Mesa Road was permissive; (2) a prescriptive easement cannot be gained by way of necessity unless the use continues for the statutory period after the necessity ceases, and (3) even if plaintiffs are entitled to the easement for road purposes, it should be limited to one-family use. It is suggested that this portion of the judgment be reversed, or, in the alternative, that this last phrase be added to the judgment.

The road as to which the plaintiffs acquired a prescriptive easement is about 10 miles south of Hemet, originates at State Highway Number 79, and traverses the lands of the defendants and terminates at the home of the plaintiffs near the north boundary line of their 160 acres. There was a map received in evidence dated September 16, 1888, which shows the existence of this road, and another dated in 1954 showing the road to exist in the same location. The record indicates that since 1892 and until defendants purchased the servient tenement in 1957, homesteaders, hunters, picnickers, residents in the area, visitors, woodchoppers, trappers, and school children used the Mesa Road without permission or interference.

One predecessor in plaintiffs' claim of title (Hill) testified that the road was used almost daily by him from 1935 to 1942 for transportation of wagons and automobiles and horses, and that during this period his friends and tradespeople coming to his property used the road, and for two or three years it was used by him to deliver milk to a nearby store. He had county graders and other equipment perform work on said road on several occasions and haul gravel and rock to stabilize it. The owner of the land underlying said road from 1908 to 1942 was the McGee family and no objection was ever made to this grading work and no permission was ever sought by plaintiffs or their predecessors in title from the McGees to use the road and the McGees never prohibited the use of it.

It does appear that some time prior to 1935 a barbed wire gate, called a California Gate, was erected across this road where it leaves the main highway (new State Highway 79) leading to plaintiffs' property, and later, in 1936, two locks were placed on the gate by the lessee of the servient property and the Hills, the persons then occupying plaintiffs' land. Keys were given to each party. The locks were placed on the

gate because the then lessee of the servient property (Folger) had lost a steer and some hay. The arrangements with reference to the locks, as testified to by Hill, were as follows: "He [Folger, who came to Hill's home] said, [he] would like to lock the gate if it met with my approval, and I told him, under the circumstances it did meet with my approval, that I would be willing to lock it with him, but that I wanted the right any time—I didn't want the gate locked; that I would snap my lock off and he would leave it that way and he had the same right to do the same thing with his locking arrangement." There were about 30 other outstanding keys made and placed in the hands of various people—friends and neighbors, and one was placed under a nearby rock and neighbors and friends were told of its location. This lock was placed there by mutual consent to keep out hunters and strangers. In 1957, defendants, the Duncans, new owners of the fee, placed a third lock on it for the convenience of both owners. They never gave express permission to plaintiffs to use the road. Mr. Duncan testified that he never tried to keep plaintiffs' predecessors from using it. Hill testified that his uncle homesteaded plaintiffs' land in 1918 and he visited him about once each month until 1921 when he left the property, and that both he and his uncle traveled over this road during that period; that others used it, such as hunters and picnickers, wood carriers and farmers, and that at that time there was no other road to his uncle's place; that he and his friends visited his uncle's place between 1921 and 1935 quite frequently, on an average of once each month, traveling over this road; that after 1942 other tenants occupied his uncle's property for about three years and they used the Mesa Road as before; that the road used to be about 12 to 13 feet in width but it has since narrowed to the width of tire tracks (about 10 feet) due to plowing of the adjoining land on each side. During all of this time no one ever tried to prevent use of the road by any of them. It was stipulated that this road had never been formally dedicated to public use. It appears that in 1954 another road, which during some seasons of the year was impassible, was built leading to plaintiffs' ranch. The claim is that due to fire hazards it was necessary to maintain both roads as a means of exit and to further accommodate plaintiffs' access to their land.

The trial judge and counsel visited the premises and made observations of present conditions. There was corroborative evidence that other people traveled this Mesa Road over the

years in question without complaint of the owners of the servient tenement. The property was sold to plaintiffs in April 1956. They farmed it and after January 1959 resided thereon with their two children. Plaintiffs testified that they had not talked to defendants about using the road before purchasing their 160 acres and that they were given a key to the gate and intended to move onto their property after purchasing it, but the gate was locked against them by defendants with another lock in July 1957, by the present owners who leased the ranch in December 1951 and later purchased it in November 1955. Plaintiffs filed this action and secured a temporary restraining order on October 10, 1958, allowing plaintiffs the use of the Mesa Road pending the hearing. Plaintiffs have used it with various vehicles ever since.

Defendants claim they did not know of any easements existing as to this road running across their property prior to its purchase by them and their deed made no mention of it; that they changed the locks on the gate in 1957 because of hunters killing their livestock; that Mr. Hill asked Duncan why he had changed the lock and he told Hill he (Hill) had no need to go in there since he sold his property, but he later gave him a key under a promise by Hill that he would not allow anyone else to use it; that plaintiff Jack Sufficool and Hill came to his (Duncan's) home and asked him what he was going to do about it and he said "Nothing"; that Duncan told Jack Sufficool he could go through the other road but Sufficool insisted on coming through that one; that subsequently Hill told him plaintiffs were going to sue Hill because Hill had told plaintiffs he had an easement or right to go through that gate and road when he sold them the property; that defendant was only on the property two or three times a week and could not refute Hill's testimony as to how often Hill used the road; that he had his farm out on share-crop from January 1, 1957 to January 1, 1960. Hill denied this conversation but claimed he did tell defendant that he had sold the property to plaintiffs and that he gave one of the keys to them and this was before the lock was changed, and that he told defendants he was afraid plaintiffs were going to sue him because he told them the road could never be closed and if defendants insisted he, Hill, would have to sue Duncan if he did not take the new lock from the gate.

■■■ Viewing the evidence under the familiar rule that all conflicts in the evidence must be resolved in favor of the judgment (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]),

we are convinced that the evidence sufficiently supports the judgment and finding.

 It generally shows that plaintiffs' predecessors in interest and plaintiffs used the Mesa Road without permission and without objection from anyone from 1918 until August 1957; that from 1918 to 1921 and 1935 to 1942, the use was almost daily, being based on full-time occupancy of the dominant tenement, and during the periods between the use was based upon full-time occupancy by friends or tenants of the owners for two years and nine months between 1942 and 1946, and weekend and vacation use by the owners and their friends; that during this period and continuing to the present time, the Mesa Road has been approximately 10 feet wide, clearly defined and in the exact location at all times; that at various times one of the plaintiffs' predecessors, Hill, repaired said road by hiring county graders for grading and filling holes with rock and gravel. Other evidence indicates that the Mesa Road was never separately assessed for tax purposes and consequently no taxes were ever paid thereon by plaintiffs or their predecessors and that plaintiffs' claim of right is based on a prescriptive right.

 It is well established that notice of adverse use on a prescriptive claim to the owner of the servient tenement is established by obvious, open, notorious and continuous use for more than five years and must be so obviously exercised as to constitute an implied notice of the adverse claim. (*Dooling* v. *Dabel*, 82 Cal.App.2d 417 [186 P.2d 183].) Acts of usage and maintenance, such as grading and repair, are evidence of such claim. (*Conaway* v. *Toogood*, 172 Cal. 706 [158 P. 200].) Where the use of a road is such as to indicate to the owner that it is under a claim of right, the fact that the road is also used by others does not impair such claim. (*Wells* v. *Dias*, 57 Cal.App. 670 [207 P. 913]; *Murray* v. *Fuller*, 82 Cal.App.2d 400 [186 P.2d 157].) In the absence of an intention to abandon the way, periods of vacancy occasioned by changes of ownership or substitution of tenants and uses which are consistent with the character of the property do not destroy the continuity of use, and payment of taxes by a prescriptive claimant is not necessary unless the easement is separately assessed. (*Bernstein* v. *Dodik*, 129 Cal.App. 454 [18 P.2d 983].) An easement as to a right-of-way is appurtenant to the dominant tenement and passes with it unless expressly excepted by the terms of the deed. (*Conaway* v. *Toogood, supra,* 172 Cal. 706.)

 The owners of the servient tenement from 1908 to 1942 were the McGees, and no permission was ever obtained from them to use the Mesa Road, nor did they seek to prohibit the same. The next owner, and defendants' predecessor, one Tharalson, joined said plaintiffs' predecessor in the existing locking arrangement and never attempted to prohibit the use of the Mesa Road, nor gave permission to use it. From the agreement reached at that time, as to locking the gate, the testimony affirmatively shows that Tharalson recognized Hill's right to the easement and, in effect, sought him out to obtain permission to place the lock on it. This clearly constituted an acknowledgment of the right of use of the Mesa Road by plaintiffs' predecessor and no one ever challenged such right until the defendants did so in August 1957. In addition, there is a rule that a use of property by one not the owner is presumed adverse and not permissive, and the presumption is strongest as to closed, cultivated and developed land. (*People* v. *Sayig,* 101 Cal.App.2d 890, 897 [226 P.2d 702].) The question is usually one of fact for the trial court. (*Weideman* v. *Staheli,* 88 Cal.App.2d 613, 616 [199 P.2d 351]; *Pratt* v. *Hodgson,* 91 Cal.App.2d 401, 404 [204 P.2d 934]; *Zunino* v. *Gabriel,* 182 Cal.App.2d 613, 616 [6 Cal.Rptr. 514].)

Plaintiffs concede that they have not claimed, and do not claim, any right in the Mesa Road based on the theory of a way by reason of necessity.

The claim that the judgment should be modified by limiting the use of the present easement to one-family use is not meritorious. A prescriptive easement is limited to the use by which it was acquired and no different or greater use can be made of the easement without defendants' consent. Whether acts of interference with easements or the uses thereof constitute a violation of the rights of the parties is a matter for future determination of a court when the particular acts are presented to it for determination. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 155 [195 P.2d 10].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.