TOBRINER, J.
 

 The San Antone Canyon, which lies east of San Jose, California, in the rugged terrain of the Mt. Hamilton Range, has not only served as a hunting and recreation area but as the locus of this dispute as to respondents’ prescriptive right to cross appellants’ lands for the pursuit of such activities. The dispute is reflected in a controversy over whether the court committed prejudicial error in instructing the jury that an open and continuous peaceable use of the claimed roadway generated a presumption that the use
 
 *157
 
 was adverse to the owner. We have concluded that while the better practice would indicate that the instruction not be given, the error, if any, worked no prejudice. As we shall explain, we believe the verdict conformed to law, the judgment conformed to the verdict, and the judgment, therefore, should be affirmed.
 

 The two brothers, respondents George LeDeit and Arthur LeDeit, and their respective wives, who own certain real property along San Antone Creek, brought this action to enjoin appellants from interfering with their use of the asserted easement. Respondents’ argument begins with respondents’ father’s acquisition in the 1920’s of land which became known as the “Old LeDeit Ranch.” The property was located at the junction of Bayo and San Antone Creeks. Mr. LeDeit used the parcel for ranching and for recreation, including hunting. The lands involved in the litigation, east of the Old LeDeit Ranch, also border San Antone Creek. During this early period the lands in the area were open and apparently unfenced.
 

 . When respondents lived on the ranch they often went hunting in the area, and, in the manner of their father, used the San Antone Canyon as a roadway. In 1936 Mr. LeDeit sold the ranch to a Dr. Beaver, who allowed respondents to continue to travel through the ranch to reach the hunting lands. But in 1941 or soon thereafter, Dr. Beaver terminated their right to do so; in any event, during the war, hunting was forbidden in the area.
 

 Thereafter, in 1944, respondents acquired 40 acres on San Antone Creek, east of the old ranch. This property is the site of the present LeDeit Cabin. On later dates respondents purchased title to other nearby parcels of property as well as options upon, or leases of, United States government lands.
 

 Then appellants in 1954 acquired their first property in the area. This piece lies midway between the Old LeDeit Ranch and the site of the present LeDeit Cabin; San Antone Creek runs through the property. Later, in 1958 and 1959, appellants purchased adjoining parcels of land located immediately between their first purchase and the present LeDeit Cabin. It is on these lands that the instant difficulties arose.
 

 The evidence shows that respondents had freely used the lands in the area without restriction to pass to and from the government lands, where they commonly went hunting, and .that they often took guests with them, To go from the LeDeit
 
 *158
 
 lands at the eastern end of the creek to the government lands used for hunting, respondents and their guests would necessarily cross appellants’ lands, including the “Greene Estate,” lands owned by Pat Greene and sold in 1958 to appellants. The road consisted of a track which closely followed the bed of the creek and passed through an area adjacent to both appellants’ and respondents’ cabins.
 

 In 1956, respondents told appellant William Ehlert that they proposed to use the road to take members of a hunting club, which they had established, to the hunting lands. Ehlert refused to agree to this procedure. Appellants built a fence or gate across the road; according to appellants, no one, during 1956, attempted to pass through this obstruction.
 

 The area, as mentioned above, had theretofore been nearly free of fences. Respondents had built a “drift fence” (Beaver Drift Fence) across the San Antone Canyon to keep cattle from straying from their land. Respondents had also erected another gate about eight years prior to the trial, but the record does not fix its location with certainty. The other ranch owners in the area had permission to use the gate. At the time the LeDeits began to use the creek bed as a road, prior owners had already used it for that purpose.
 

 After appellants erected the obstruction, respondents claim they still used the roadway; they did not seek appellants’ permission to do so. If the gate were closed by a lock, they “cut it off.” Respondents continued to pass through appellants’ property although they knew that appellants objected. Finally appellants hired a man to dig a hole in the middle of the road and thus block all travel across the property. Unable to use the creek bed as a means of reaching the hunting area, respondents brought this action, claiming that appellants interfered with a prescriptive easement appurtenant to the various lands owned by respondents.
 

 The jury found for respondents and returned the following special verdicts:
 

 “I. Extent of easement: For personal ingress and egress for purposes of entering LeDeit family lands and public lands on option.
 

 “2. If personal, the extent of personal use: Recreation and hunting for family and non-paying guests.
 

 “3. If appurtenant, the lands to which the easement is appurtenant: None.
 

 “4. Route of easement: A reasonable route confined to the path of the San Antone Creek commencing at the easterly
 
 *159
 
 most boundry of the Bhlebt property to a point just west of the junction of Burnt Canyon and the San Antone Creek then one convenient route to each of the optioned properties.
 

 ‘ ‘
 
 5. Time of year may be used: No restriction.
 

 ‘ ‘ 6. Amount of damages: Zero. ’ ’
 

 The trial court thereupon entered a “Judgment Upon Verdict and Permanent Injunction.” The judgment states that respondents “are the owners of easements and rights of way over and across” appellants’ land and that “the nature and extent of such easements and rights of way are as follows, to wit:
 

 “First: The right of way for ingress and egress by all means of conveyance for the above-named plaintiffs, their families and non-paying guests for the purposes of recreation and hunting, over a strip of land of a width sufficient for the ordinary uses of free passage, alone the following route, to wit: [there follows a detailed description of the easement].
 

 “Second: Together with a further easement of the same general nature over so much of the following route as lies within the lands of the defendants as described above, to wit: [there follows a description of an easement allowing respondents access to the government lands along the ridge top and to other LeDeit properties].
 

 “Third; [The description of an easement furnishing access to government lands.]
 

 “Fourth: [The description of an easement furnishing access to a smaller segment of government lands.] ”
 

 The court issued a permanent injunction restraining appellants from interfering with respondents’ use of the easements set forth above and ordered appellants to remove certain obstructions to such easements. We treat under separate headings
 
 infra
 
 each of the three basic points urged by appellants in their attack upon the judgment. We consider finally the propriety of the court’s denial of appellants’ motion to strike respondents’ memorandum of costs and disbursements.
 

 1.
 
 The trial court did not commit prejudicial error in instructing the jury that open, continuous, notorious and peaceable use for the prescriptive period gave rise to the presumption that the use was adverse to the owner.
 

 We shall point out that the Supreme Court has indicated that the issue of whether or not open use of unenclosed land demonstrates use adverse to the owner should be treated as a question of fact rather than presumption. The trial court here, however, did give, and, upon request, reiterate, the fol
 
 *160
 
 lowing instruction: “On a showing of an open, continuous, notorious and peaceable use for the prescriptive period" a presumption arises that such use was under a claim of right adverse to the owner.” While the preferable procedure would have eliminated the instruction, cases subsequent to the Supreme Court’s admonition have upheld the presumption in varying situations. We cannot, in the light of the record and the accompanying instructions, hold that the rendition of the instruction, even if error, worked prejudice.
 

 The presumption has had a troubled history. As Justice Carter explained in
 
 O’Banion
 
 v.
 
 Borba
 
 (1948) 32 Cal.2d 145 [195 P.2d 10], some cases had held before that decision that “the showing of an open, continuous, notorious and peaceable use for the prescriptive period” gave rise to a presumption that “the use is under a claim of right adverse to the owner”; other cases had held that in the absence of “specific direct evidence of an adverse claim of right” the opposite “presumption of permissive use is indulged. ” (P.149.) To resolve this “considerable confusion in the cases” (p. 148) the.court in
 
 O’Bamion
 
 declared that the issue of adverseness should not be treated as one involving a presumption but as a question of fact.
 

 The Supreme Court there stated: “The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no ..apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. In the appellate court the issue is merely whether there is sufficient evidence to support the judgment of the trial court. . . . ‘The question as to'whether or not the use of a right of way has been adverse and under a claim of legal right so to do, or a mere matter of neighborly accommodation, is a question of fact to be determined by the jury, or the court sitting without a jury, from all the facts and circumstances of the case.’ ” (Pp. 149-150.)
 

 Subsequent cases and comments do not specifically hold the application of the presumption to be necessarily erroneous; despite the language of
 
 O’Banion,
 
 decisions dealing in,various situations have indulged the presumption. Thus the court in
 
 *161
 

 People
 
 v.
 
 Sayig
 
 (1951) 101 Cal.App.2d 890, 897 [226 P.2d 702] states as to a public easement: “There is a general presumption that a use by other than the owner is adverse and not permissive. While this presumption is not as strong when the land is open and uncultivated and remote, as when it is enclosed, cultivated and developed [citations], the presumption exists in either ease. The problem is one of fact for the trial court. (See
 
 O’Banion
 
 v.
 
 Borba,
 
 32 Cal.2d 145, 149 [195 P.2d 10]; . . ." Likewise, in a ease involving the claimed dedication of a road as a public highway, the court states in
 
 Walter G. Brix, Inc.
 
 v.
 
 Brown
 
 (1956) 145 Cal.App.2d 177 [302 P.2d 74] : “Furthermore, there is a general presumption that a use by other than the owner is adverse and not permissive, and that, while this presumption is not as strong when the land is open and uncultivated and remote as it is when it is enclosed, cultivated and developed, the presumption exists in either case.” (P. 178.)
 

 The presumption, too, has been recognized in cases involving closed, cultivated and developed land. In
 
 Mathews
 
 v.
 
 Brinton
 
 (1955) 132 Cal.App.2d 433 [282 P.2d 93], “The land was used for pasturage at times, and some farming was done on the cleared portion.” (P. 434.) The court stated: “The question as to the effect of any presumption that the use is under a claim of right and adverse to the owner of the land must be considered along with the showing as to the nature of the use during the prescriptive period, with all other facts of the case, and is one of fact for the trial court which must decide whether the proven facts do or do not justify an inference showing the required elements.” (P. 438.) In an analogous ease involving farmed land, the court in
 
 Sufficool
 
 v.
 
 Duncan
 
 (1960) 187 Cal.App.2d 544 [9 Cal.Rptr. 763] referred to the presumption: “In addition, there is a rule that a use of property by one not the owner is presumed adverse and not permissive, and the presumption is strongest as to closed, cultivated and developed land.” (P. 550.)
 

 The Supreme Court, in a case in which a plaintiff claimed that he had a prescriptive right for the diversion of water over defendants’ lands, has held that open possession raised a presumption of notice. Thus in
 
 Hails
 
 v.
 
 Martz
 
 (1946) 28 Cal.2d 775 [172 P.2d 52], (a case decided prior to
 
 O’Banion),
 
 the court said: “Defendants also argue that plaintiff is not entitled to a finding on the issue of a prescriptive right because there was assertedly no evidence that defendants Martz had actual knowledge of the alleged diversion of water over their
 
 *162
 
 land. It is the general rule that open, visible and notorious possession will raise a presumption of notice.” (P. 778.) (See also:
 
 Board of Directors of Turlock Irr. Dist.
 
 v.
 
 City of Ceres
 
 (1953) 116 Cal.App.2d 824, 829 [254 P.2d 907].)
 

 We believe, however, that
 
 O’Banion
 
 properly expresses the rule that the open and notorious use of unenclosed land, instead of producing the presumption of adverseness, composes nothing more than an aspect of the evidence in the light of the relevant circumstances and inferences. Justice Peters, speaking for the court in
 
 Lindsay
 
 v.
 
 King
 
 (1956) 138 Cal.App.2d 333 [292 P.2d 23], so interprets
 
 O’Banion.
 
 In
 
 Lindsay
 
 appellants attacked the judgment of the trial court, rendered without a jury, because the trial judge said “that ‘prescription is based upon hostility, and hostility can be inferred from the openness of acts that puts people on their inquiry, and, as I have earlier stated, there is a presumption from usage.’ ” (P. 344.) Justice Peters held: “It was probably inaccurate to state, in effect, that because a use has been open and notorious a presumption of hostility and therefore adverse use arises. Probably the correct statement is that this is only another phase of the sufficiency of evidence in the light of all the circumstances.
 
 (O’Banion
 
 v.
 
 Borba,
 
 32 Cal.2d 145, 149 [195 P.2d 10];
 
 People
 
 v.
 
 Sayig,
 
 101 Cal.App.2d 890, 897 [226 P.2d 702].) ” (P. 344.)
 

 The above cases indicate that the instruction in the instant matter did not express the “correct” or “better” view; indeed, the very authority from which respondents’ instruction was derived states that the “better” view regards the matter as a question of fact. While the instruction did no more than incorporate the exact language contained in the California Jurisprudence article on Easements, that encyclopedia qualifies the quoted sentence with the following comment : ‘ ‘ The better view, however, is to treat the presence or absence of the adverse claim of right as an issue of fact, giving consideration to all the circumstances and inferences that may be drawn.” (17 Cal.Jur.2d §22, pp. 125, 126; footnote omitted.)
 

 While we believe, then, that the instruction did not follow the better rule, we have concluded, even assuming the error, that the instruction did not constitute prejudice. As we shall show, the record itself indicates an adverse use; it reveals no request for, or receipt of, permission from appellants to use the roadway. Moreover, in view of the totality of instructions in the ease, we cannot believe that the error in this single in
 
 *163
 
 stance was so great that without it the jury would have probably rendered a different verdict; the point of the instruction was not sufficiently sharp to pierce to the heart of the issue.
 

 The record contains various indicia of adverse use. Respondents treated the roadway as their own; they repaired and maintained it; they used pick and shovel, and, in later years, a bulldozer, to improve it. Such acts of maintenance constitute evidence of a claim of right.
 
 (Conaway
 
 v.
 
 Toogood
 
 (1916) 172 Cal. 706 [158 P. 200].) For some 35 years respondents, at different times, seasons, days of the week, both in daylight and dark, used the roadway. The tracks of the jeeps which traversed the road were marked upon it and observable to appellants. The principal road ran close to appellants’ cabin. Acts of dominion inconsistent with permissive user serve as prima facie evidence of notice of a claim of right.
 
 (Dooling
 
 v.
 
 Dabel
 
 (1947) 82 Cal.App.2d 417 [186 P.2d 183];
 
 Fleming
 
 v.
 
 Howard
 
 (1906) 150 Cal. 28 [87 P. 908].) The evidence shows that respondents did not request or receive permission to use the roadway for hunting purposes; such showing “would support an inference of a claim of right.”
 
 (Lord
 
 v.
 
 Sanchez
 
 (1955) 136 Cal.App.2d 704, 707 [289 P.2d 41];
 
 Medina
 
 v.
 
 Brown
 
 (1959) 172 Cal.App.2d 208, 212 [342 P.2d 353];
 
 Lindsay
 
 v.
 
 King, supra,
 
 138 Cal.App.2d 333.) The jury could have drawn an inference that the user was adverse.
 
 (Union Transp. Co.
 
 v.
 
 Sacramento County
 
 (1954) 42 Cal.2d 235, 241 [267 P.2d 10];
 
 Jones
 
 v.
 
 Harmon
 
 (1959) 175 Cal.App.2d 869, 875 [1 Cal.Rptr. 192].) The jury’s finding of adverse use will not be set aside by the appellate court in the face of substantial evidence to sustain the finding.
 
 (Pratt
 
 v.
 
 Hodgson
 
 (1949) 91 Cal.App.2d 401, 404-405 [204 P.2d 934].)
 

 Not only do we find in the record sufficient evidence to support an adverse user but also we do not find in the attacked instruction an impact so telling that it led to probable prejudice. The instruction was but one of many related instructions; other instructions limited it and defined its function. Thus appellants’ instruction number 15 explained that a presumption could be rebutted by evidence; respondents’ instruction number 15 stated that the use of the claimed easement must be so obviously exercised as to constitute an implied notice of the adverse claim, and that whether the use is adverse “is a question of fact”; respondents’ instructions numbers 16 and 17 defined adverse use and hostility. Ap
 
 *164
 
 pellants’ instruction number 6 stated: “Whether possession and use is hostile and under a claim of right indicated to the owner, or whether the use is a mere matter of neighborly accommodation is a question of fact to be determined in light of the relations between the parties and the surrounding circumstances.” Appellants’ instruction number 7 informed the jury that a prescriptive right could not be acquired if the use were “with permission of the owner of the land. . . .” Appellants’ instruction number 9 explained that the acquisition of a right of way “generally requires some circumstance or act in addition to . . . use ... to indicate that the use has been claimed as a right. ...”
 

 The strength of the ostensibly errant instruction was further diluted by an instruction offered by appellants which closely approximated the ground of the challenged one. Appellants' own instruction number 8 set out that the party claiming the right bore the burden of proving the essential elements of prescription but when they had “been established prima facie, the burden of . . . showing that use of the easement was by permission of the owner of the intended servient estate shifts to such owner.” Such an instruction comes close to the instruction that once the elements of use had been established, the presumption of adverse use arises, and the owner must rebut it.
 

 In this background of instructions and of the record we cannot believe that the improper instruction was so important to the jury and its thrust so deep that it led the jury into crucial error. As we said in
 
 Korakakis
 
 v.
 
 Freeman
 
 (1960) 178 Cal.App.2d 331 [2 Cal.Rptr. 802]: “In conclusion, we do not find upon a consideration of the entire record, and the instructions read as a whole, that, even assuming some error in phraseology of the instructions, prejudicial error under article VI, section 4%, of the California Constitution occurred here. As the Supreme Court stated in
 
 Shucy
 
 v.
 
 Asbury
 
 (1936) 5 Cal.2d 712, 713 [55 P.2d 1160], ‘It is now settled law that a judgment will not be reversed by reason of an erroneous instruction, unless upon a consideration of the entire case, including the evidence, it shall appear that such error has resulted in a miscarriage of justice. The usual consequence is, that there will be no cause for reversal unless the evidence indicates that without such error in the instructions the verdict probably would have been different from the verdict actually returned by the jury.’ ” (P. 338.)
 

 
 *165
 
 2.
 
 The verdict is not contrary to law.
 

 Appellants unsuccessfully contend that the verdict is contrary to law in that, although it grants respondents only a personal easement, it extends the use to respondents’ “family” (“families” in the judgment) and nonpaying guests and thus improperly creates an easement not only in respondents, but also in their “families” and nonpaying guests. On the other hand, respondents reply that the jury misunderstood the meaning of the word “appurtenant,” and the verdict must properly be construed as creating an easement appurtenant. We cannot agree with either appellants’ or respondents’ stated contentions.
 

 The verdict can only be reasonably construed as creating an easement in gross. To hold to the contrary would completely ignore the jury’s finding: “If appurtenant, the lands to which the easement is appurtenant: None.” Although the verdict states that the easement is for the purpose of entering respondents’ and public lands, it specifically states it is not appurtenant to any land and that the easement is personal. The holding implies that the easement is in gross.
 

 In arguing that the verdict and judgment create an easement in respondents’ families and nonpaying guests, appellants confuse the effect of the rendered decision. The judgment specifically names respondents as “the
 
 owners
 
 of easements and rights of way” (emphasis added) over appellants’ land; it does not purport to extend such rights to family members or nonpaying guests. In its definition of the “nature and extent of such easements” the judgment includes the use of such families and nonpaying guests but it certainly does not designate them as owners of the easements. Thus respondents may take other persons with them when using the roadway to go hunting on the other lands; the right, however, inures in respondents, not in their nonpaying guests or families. Such use of the creek bed coincides with the prior use to which the right of way had been subjected. It is this prior use which controls the extent of the easement acquired. (Civ. Code, §806;
 
 Allen
 
 v.
 
 San Jose Land & W. Co.
 
 (1891) 92 Cal. 138,141 [28 P. 215, 15 L.R.A. 93]; 17 Cal. Jur.2d § 24, p. 129.)
 

 Appellants’ citation of the Utah case of
 
 Ernst
 
 v.
 
 Allen
 
 (1919) 55 Utah 272 [184 P. 827] and Thompson on Real Property, section 345, to the effect that an easement in gross is “ ‘so exclusively personal that the owner by right cannot take another person in company with him’ ”
 
 (Ernst
 
 v.
 
 Allen,
 
 
 *166
 

 supra,
 
 p. 829 [184 P.]) does not reflect California law.
 
 Ernst
 
 does not involve an easement in gross, but an easement appurtenant. Further, the definition of an easement in gross quoted in that case conflicts with the definition applied under California law. In
 
 Ernst
 
 the court noted favorably the following definition from 3 Words and Phrases 2311: “ ‘An easement in gross is a mere personal interest in the real estate of another, and is not assignable or inheritable. It dies with the person, and it is so exclusively personal that the owner by right cannot take another person in company with him.’ ” (P. 829 [184 P.].) In California an easement in gross is both assignable and inheritable
 
 unless
 
 restricted by proper language to certain individuals.
 
 (Callahan
 
 v.
 
 Martin
 
 (1935) 3 Cal.2d 110, 121 [43 P.2d 788, 101 A.L.R. 871];
 
 Fudickar
 
 v.
 
 East Riverside Irr. Dist.
 
 (1895) 109 Cal. 29 [41 P. 1024]; Civ. Code, § 1044;
 
 Collier
 
 v.
 
 Oelke
 
 (1962) 202 Cal.App.2d 843, 845-847 [21 Cal.Rptr. 140].) As a consequence an easement in California is not of the same nature as an easement in gross in some other states.
 

 A further basis for the rejection of appellants’ contention that the verdict is contrary to law because it permits respondents to take others with them when passing along the right of way, lies in the fact, which we have noted
 
 supra,
 
 that ‘ ‘ [t] he extent of a servitude is determined by the terms of the grant, or
 
 the nature of the enjoyment by which it was acquired.”
 
 (Civ. Code, § 806; emphasis added; see also:
 
 Hannah
 
 v.
 
 Pogue
 
 (1944) 23 Cal.2d 849, 854 [147 P.2d 572].) Thus if respondents had taken cattle with them in passing along the easement during the prescriptive period, appellants could not protest a continued use which complied with such a previous one. In the instant case respondents in using the roadway over a period of many years were accompanied by friends or relatives. Such prior use may continue, but the use of the easement by nonpaying guests may only be exercised when in the company of a respondent. On the other' hand, the verdict and judgment do not permit respondents to take paying guests over appellants’ land; such use is not consistent with such prior use and would therefore constitute a surcharge on the easement.
 

 Appellants’ further contention that the definitions of “family” (“families” in the judgment) and nonpaying guests are so vague that they threaten surcharging of the easement cannot stand. The definition of family is unimportant. Whether a person accompanying a LeDeit along the road were
 
 *167
 
 or were not a member of the family, he would be a guest, and hence included in the definition.
 

 Finally, and in any event, the use of the easement by respondents accompanied by nonpaying guests does not meet with any basic protest of appellants. Appellants state they have “no objection to the verdict of the jury except as to the ambiguity of ‘non-paying guests.’ As to this portion of the verdict, it is appellants’ position that if such guests are in the company of respondent, there is no objection.”
 

 Having disposed of appellants’ attacks upon the verdict, we turn to respondents’ contention that the easements should have been held to be appurtenant to respondents’ lands and that the jury misunderstood the meaning of the word appurtenant.
 

 Respondents complain of ambiguity in the verdict in that “it first finds that the easement is for entering ‘LeDeit family lands & public lands on option,’ and later finds that the easement is not ‘appurtenant.’ ” Although respondents leased government lands, they did not own them; the easement, therefore, could not be appurtenant to these lands. Nor do we find ambiguity in the verdict because it does not find the easement appurtenant to respondents’ lands. The evidence properly supports a finding that the easement was not necessarily for the benefit of any lands.
 

 Although respondents contend that the jury misunderstood the meaning of the word “appurtenant,” they fail to make any showing to substantiate this position. The jury was instructed as to the difference between an easement in gross and an easement appurtenant; respondents themselves submitted the rendered instruction. The verdict finds that the easement extended to personal ingress and egress to respondents’ lands; it specifically states the easement is not appurtenant to any lands.
 

 3.
 
 The judgment conforms to the verdict.
 

 We cannot accept appellants’ contention that the judgment does not conform to the terms of the verdict. We group below appellants’ eight instances of alleged differences and point out that they are not material to the resolution of the ease.
 

 (1) Although the verdict says the easement is for “personal ingress and egress,” the judgment omits the word “personal.” This failure, appellants claim, changes “the entire nature of the verdict.” Since the “personal ingress
 
 *168
 
 and egress,” set out in answer to the first question in the verdict, pertained merely to the
 
 extent
 
 of the easement and not to the question of whether it was in gross or appurtenant, the omission does not affect the result. Further, we have already rejected respondents’ claim that the easement is appurtenant to respondents’ lands.
 

 (2) Appellants repeat the argument that substitution of “families” for “family” extends the easement to an inheritable right, whereas an easement in gross is personal and not inheritable. Again, the question of inheritance is concluded by a determination that the right to the easement was limited to respondents personally; the terms quoted above are too vague and ill-defined to affect such a decision. Moreover, the word “families,” used in the judgment, is no more plural than the word “family” contained in the verdict. The record shows respondents are married men; both have “families. ’ ’
 

 (3-6) Appellants claim that while the verdict defines the easement as “a ‘reasonable route confined to the path of the San Antom'o Creek,’ ” the judgment described it as “ ‘a strip of land of a width sufficient for the ordinary uses of free passage . . . following all the meanders of said creek down-stream, sometimes following the Northerly bank thereof, and sometimes following the Southerly bank thereof, and generally following the old jeep trail. ’ ” Thereafter the judgment provides a more technical description of the easement. Appellants fail to show, and no map contained in the exhibits, permits us to find, that the route described in the judgment is incorrect. The court apparently clarified a general statement in the verdict by construing it in the light of the evidence and the pleadings. As stated in
 
 Snodgrass
 
 v.
 
 Hand
 
 (1934) 220 Cal. 446, 448 [31 P.2d 198], in an appeal on the judgment roll, “In construing a verdict reference may be had to the pleadings, the evidence and the charge of the court.” (See also
 
 Phipps
 
 v.
 
 Superior Court
 
 (1939) 32 Cal.App.2d 371, 376 [89 P.2d 698].) In the absence of a showing that the judgment in so doing materially alters the result, appellants fail to meet the burden, placed upon them, to prove error.
 

 Complaining of the description of several branch easements granted by the trial court, appellants state that the routes described vary in certain ways from the easements in the verdict. Yet they offer us no method by which we can test their bare assertions. Appellants must meet the duty of
 
 *169
 
 showing affirmatively that error occurred; they have not sustained that burden.
 

 As to the branch easements, the verdict provides for a convenient route to each of the optioned properties. The judgment calls for an additional easement which, after passing through part of such optioned properties, leads to the northernmost of respondents’ holdings. Apparently appellants correctly state that the judgment in so doing provides for one more easement than is contemplated by the verdict. The judgment, however, in accordance with the first part of the verdict, may properly construe the verdict to refer to routes to land owned, and held on option, by respondents. If the easement is to permit respondents to travel to their various lands, available routes must be provided.
 

 (7-8) Appellants complain that the judgment provides for injunctive relief, which is not specified in the verdict. It is the function of the court, of course, to render such relief; the power of injunction does not fall within the province of a jury. Further, the injunction constitutes a common method of protection against the infringement of easements. On the other hand, the injunctions continue only for so long as the easement exists. Since the easement is in gross, the injunctions cease after the death of respondents.
 

 4.
 
 The court did not abuse its discretion in denying appellants’ motion to strike the memorandum of costs and disbursements and in granting respondents’ motion for relief and for leave to file such memorandum after the expiration of the statutory period.
 

 We find no basis for holding that the trial court abused its discretion in allowing relief from the late filing of the cost bill.
 

 Respondents filed the cost bill after the expiration of the period specified in section 1033, Code of Civil Procedure, of 10 days from the entry of judgment; the delay, according to appellants, totalled 22 days. The transcript shows that judgment was entered on July 22, 1960; the cost bill was filed on August 23, 1960; appellants state it was served upon them on August 24, 1960. On August 30, 1960, appellants moved to strike the bill; on the other hand, respondents filed their motion, dated September 8, 1960, requesting relief from their default. Although respondents did not file an affidavit of merits with the motion, respondents’ counsel testified as to the reasons for the filing at that date.
 

 
 *170
 
 Respondents’ counsel stated that he mistakenly believed that the “notice of appeal . . . would stay” the running of the time; that, more significantly, since he was assuming an association as counsel with
 
 ‘ ‘
 
 three very large savings and loan institutions,” he was engaged at the time “in closing out . . . [his] office activities”; he “was trying to disburse . . . [his] practice” and “giving up . . . [his] lease on . . . [his] offices”; he was “under a tremendous work load fourteen to sixteen hours a day. ...”
 

 In the face of these facts we cannot say that the trial court committed that abuse of discretion which, if this court is to set aside the trial court’s order, must clearly appear.
 
 (Carbon-dale Machine Co.
 
 v.
 
 Eyraud
 
 (1928) 94 Cal.App. 356 [271 P. 349];
 
 Haviland
 
 v.
 
 Southern Cal. Edison Co.
 
 (1916) 172 Cal. 601 [158 P. 328].) We are further bound to resolve any doubt in favor of the party requesting such relief.
 
 (Jergins
 
 v.
 
 Schenck
 
 (1912) 162 Cal. 747, 748 [124 P. 426];
 
 J. A. Vaughan Corp.
 
 v.
 
 Title Ins. etc. Co.
 
 (1932) 123 Cal.App. 709, 710-711 [12 P.2d 117].) Moreover, the time limitation here does not constitute a matter of jurisdiction; it is directed to the sound discretion of the court. (See
 
 Freeman
 
 v.
 
 Goldberg
 
 (1961) 55 Cal.2d 622, 625 [12 Cal.Rptr. 668, 361 P.2d 244];
 
 Beard
 
 v.
 
 Beard
 
 (1940) 16 Cal.2d 645, 647 [107 P.2d 385] (relief from default judgment after six month delay) ;
 
 Benjamin
 
 v.
 
 Dalmo Mfg. Co.
 
 (1948) 31 Cal.2d 523, 525-526 [190 P.2d 593].) Nor have appellants offered any showing that the 22-day delay caused them prejudice.
 
 (City of Los Angeles
 
 v.
 
 Board of Supervisors
 
 (1930) 105 Cal.App. 199 [287 P. 135];
 
 Carbondale Machine Co.
 
 v.
 
 Eyraud, supra,
 
 94 Cal.App. 356.)
 

 The cases cited by appellants do not pertain to a situation, as in the instant ease, in which relief has been sought pursuant to section 473 of the Code of Civil Procedure. In
 
 Davis Lumber Co.
 
 v.
 
 Hubbell
 
 (1955) 137 Cal.App.2d 148, 151 [290 P.2d 33], for instance, the court specifically notes that the defaulting party did not attempt to obtain relief under the statutory provision. Appellants’ cases do not apply to the problem before us.
 

 Recapitulating as to the propriety of the presumption that open and notorious use begets adverseness, we have concluded that the presumption is unfortunate. The whole field of easements is fertile, and indeed, overgrown, with diverse and contrasting presumptions. To make one’s way through this bramble-bush is no less difficult than to break through the
 
 *171
 
 chaparral of the Mt. Hamilton Range. The wisdom of
 
 O’Banion
 
 in uprooting at least one such presumption is further confirmed by the continuing conflict in other jurisdictions in announcing completely contradictory presumptions as to the effect of open and continuous use. (See 1954 Annual Survey of American Law, p. 606.) Finally, as the semiurbanization of the countryside blurs the old lines between city and country, the differences between “open” and “enclosed” land become harder to ascertain, and presumptions as to “open,” as opposed to “enclosed” land, harder to apply. Thus, even though we conclude here that the instruction on the presumption did not inflict prejudice, we opine that the future role of the presumption must be a narrow and vanishing one.
 

 We affirm the judgment. The purported appeal from the verdict is dismissed.
 

 Bray, P. J., and Sullivan, J., concurred.
 

 A petition for a rehearing was denied July 23, 1962, and respondents’ petition for a hearing by the Supreme Court was denied August 22,1962. Tobriner, J., did not participate therein.